## 19593

GOVERNMENT EMPLOYEES INSURANCE COMPANY, Respondent v. Elizabeth MACKEY et al., Defendants, of whom Calvin Jefferson Paul, a minor over the age of fourteen years, et al., are, Appellants.

(195 S. E. (2d) 830)

Messrs. *Haynsworth, Perry, Bryant, Marion & Johnstone,*
and *William H. McPherson,* of Greenville, and *Paul E.
Bowie, III,* of Easley, *for Appellants,*

308

*Messrs. Love, Thornton, Arnold & Thomason,* of Green-
ville, *for Respondent,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,*
and *William H. McPherson,* of Greenville, and *Paul E.
Bowie, III,* of Easley, *for Appellants, in Reply.*

March 21, 1973.

Moss, Chief Justice:

This action is one under "The Uniform Declaratory
Judgments Act", Section 10-2001 *et seq.,* 1962 Code of
Laws. Government Employees Insurance Company, the re-
spondent herein, brought this action to determine the extent

of its liability, if any, under an automobile liability policy issued on August 26, 1970, to Elizabeth Mackey, pursuant to the South Carolina Assigned Risk Plan and covering her 1967 Chevrolet automobile.

On April 11, 1971, Calvin Jefferson Paul, a minor, while driving the 1967 Chevrolet owned by Elizabeth Mackey was involved in a head-on collision with a 1966 Pontiac automobile being owned and driven by his father, Jefferson Paul, Jr. At the time of the accident, there were passengers in each of the aforesaid vehicles, two of whom lost their lives and the others sustained personal injuries. Donnie Rhodes, one of the injured passengers in the Mackey automobile, has instituted an action against Calvin Jefferson Paul, Elizabeth Mackey, and Jefferson Paul, Jr., to recover damages therefor.

The respondent in its complaint alleges three separate causes of action: (1) that it cancelled (prior to the accident in question) the policy issued to Elizabeth Mackey for non-payment of the premium thereon; (2) that Elizabeth Mackey fraudulently misrepresented certain material facts in an attempt to obtain the liability insurance at a reduced premium rate; and (3) that at the time of the accident in question, the automobile of Elizabeth Mackey was being driven by Calvin Jefferson Paul without either the express or implied permission of the named insured. All the injured persons were made parties to this action. Peninsular Fire Insurance Company was also made a party because it had uninsured motorist coverage on the Pontiac automobile of Jefferson Paul, Jr.

The appellants, by their answers, set up a general denial and the defense of waiver and estoppel.

This case came on for trial before the Honorable William L. Rhodes, Jr., Presiding Judge, and a jury, at the 1972 term of the Court of Common Pleas for Greenville County. By agreement of counsel for the parties a general issue was submitted to the jury to return a verdict either in favor of the respondent or in favor of the appellants. The jury returned a

verdict in favor of the respondent. The appellants made timely motions for a directed verdict and, after the verdict, for judgment *non obstante veredicto* or in the alternative for a new trial. The trial judge overruled all of the foregoing motions and this appeal followed.

One of the exceptions of the appellants raises the question as to whether the policy of liability insurance issued by the respondent to Elizabeth Mackey was properly cancelled.

It appears from the record that on August 20, 1970, Elizabeth Mackey went to the insurance agency of Carl E. Watkins in Easley, South Carolina, and executed an application for liability insurance under the Assigned Risk Plan. It was represented in the application that Elizabeth Mackey and Robert Mackey, her son, would be the operators of the insured motor vehicle. The application stated that Elizabeth Mackey had not previously applied for liability insurance under the Assigned Risk Plan and that there were no violations against either of the operators of the insured vehicle. The anticipated liability policy premium was $152.00, and a collision policy premium of $128.00, such collision policy to be written by Northland Insurance Company. The total premium for the coverage was $280.00 and a down payment of $98.00 was made to Carl E. Watkins, the producer of record, and the balance of the premium was to be financed by Piedmont Premium Service, Inc., and such was to be paid in monthly installments. Elizabeth Mackey assigned to Piedmont Premium Service Inc., any and all unearned premiums and dividends which may become payable under the policies financed by it. It was further provided that any money received from the insurance company should be credited to the balance due under the agreement.

The application of Elizabeth Mackey was sent to the South Carolina Automobile Assigned Risk Plan and such was assigned to the respondent for the issuance of a liability insurance policy, coverage to become effective on August 26, 1970. Following its customary procedure, the respondent,

through an independent agency, obtained from the South Carolina Highway Department, an official motor vehicle report of any traffic violations by Elizabeth Mackey or Robert Mackey, her son.

It is conclusive from the application in the record, that Robert Mackey, date of birth July 10, 1954, driver's license number 4526473, was to be one of the two licensed operators of the insured motor vehicle. The official motor vehicle report received from the South Carolina Highway Department showed an offense of "driving uninsured", on June 13, 1968, by the said Robert Mackey.

The respondent issued a liability policy to Elizabeth Mackey in accordance with the rules of the Assigned Risk Plan and billed her for an additional premium of $121.00 because of the application of an 80 per cent surcharge. Accompanying the policy was a notice that the surcharge resulted from the conviction listed on the motor vehicle report obtained from the State Highway Department. The insured was given thirty days in which to remit the additional premium. The producer of record received a copy of the policy and because of the demand for an additional premium of $121.00, contacted the insured. As a result of such conversation, the producer, on September 17, 1970, wrote the respondent the following letter:

"We received the above policy along with a billing for $121.00 additional premium. I have contacted Mrs. Mackey and she says that her son, Robert Mackey, Jr., has not had any traffic violations but her husband, Robert Mackey, Sr. has had. If you will double check, I think you will find that you are charging her with these violations. Mrs. Mackey is separated from her husband and he does not drive her car. Please make this adjustment and clear this billing."

The respondent, on September 28, 1970, replied to the foregoing letter as follows:

"Regarding your letter of 9/17/70:

"On 6/13/68, Robert Mackey, Jr. has an offense of driving uninsured which carries with it 5 penalty points and 80 percent surcharge. This is the reason for the additional premium."

After receiving this reply, the producer, on October 5, 1970, again wrote the respondent and stated:

"We wrote you on Sept. 17, 1970 concerning the additional premium billing on the above policyholder. You answered our letter on September 28, 1970, saying that on 6-13-68 Robert Mackey, Jr. had an offense of driving uninsured. This is rather impossible. Robert Mackey, Jr., the son of our insured, did not have a license until 9-18-69. His license number is 4526473. Let's try to clear this up for Mrs. Mackey."

The respondent, by letter dated October 16, 1970, in reply to the letter of the producer dated October 5, 1970, enclosed a copy of the motor vehicle report, contents of such are above referred to, and stating, "If you can help us in clearing up this matter, please advise". Upon receipt of this letter and the motor vehicle report, the producer again contacted Elizabeth Mackey and advised her that this report showed a violation against her son, and that if the surcharge was not paid, the policy would be cancelled. Elizabeth Mackey stated that she had a letter from the Highway Department showing that her son did not have a violation, and the producer requested her to bring this letter to him promptly, so that something could be done to avoid cancellation. It appears that if Elizabeth Mackey had such a letter, she did not bring it to the producer, nor did she discuss cancellation any further.

The respondent, having received no further reply from the producer, and not having received the added premium charge, on November 20, 1970, mailed a notice of cancellation to Elizabeth Mackey, Rt. 4, Easley, S. C. 29640, and copies thereof were forwarded to the producer and Piedmont Premium Service, Inc. The notice provided that the

policy would be cancelled at 12:01 A. M., December 1, 1970, for nonpayment of premium. The cancellation notice was sent by regular mail as evidenced by a post office receipt, and was not returned to the respondent.

The respondent, on December 16, 1970, mailed to Elizabeth Mackey, Rt. 4, Easley, S. C. 29640, a cancellation confirmation notifying her that she had been previously informed of the policy cancellation, due to nonpayment of premium. She was advised, that the unearned premium was being sent to Piedmont Premium Service, Inc., as was required under her agreement with the finance company, and a copy of this letter was forwarded to Carl E. Watkins, the producer of record. The State Highway Department was properly notified of the cancellation of the policy. Elizabeth Mackey and the producer of record were notified on January 8, 1971, by Piedmont Premium Service, Inc., that it had received the refund for the unearned premium from the respondent, and her account was being credited with the amount so received. The insured admitted that she received this notice.

Carl E. Watkins, the producer of record, testified that Elizabeth Mackey came to his office and brought with her a letter, dated January 8, 1971, from the State Highway Department showing that Robert Mackey, Jr., had no violations. Watkins testified that he told Elizabeth Mackey that her policy had already been cancelled, and it would be necessary for her to file another application if she wanted liability coverage, but she stated she did not want to do so at that time.

Elizabeth Mackey, in her testimony denied receiving any notices concerning the cancellation of the policy by the respondent. She likewise denied having any conversation with Carl E. Watkins concerning the cancellation of the policy.

We think the appeal in this case can be disposed of by determining whether the jury could find that the policy of liability insurance issued by the respondent to Elizabeth Mackey, was properly cancelled. Under and pursuant to Sec-

tion 46-750.51 of the Code, a liability insurance policy can be cancelled by the insurer when the insured fails to make payment of premium for the policy. The manner of cancellation is set forth in Section 46-138, as amended, of the Code as follows:

"Prior to the termination of insurance by cancellation or refusal to renew by the insurer, at least ten days' notice of such cancellation or refusal to renew shall be forwarded to the insured at his designated address by either certified mail or by regular mail when evidence by a post-office receipt form and in such event, or in the event of any termination of insurance by the insured, notice of such cancellation or other termination shall be filed by the insurer with the Department not later than five days following the effective date of such cancellation or other termination."

It is the contention of the appellants that the respondent was not entitled to cancel the policy in question because the insured failed to pay an additional premium or surcharge. They further contend that the insured was not liable for an additional premium or surcharge because Robert Mackey had no driving violation and such could have been ascertained if the respondent had made a more extensive investigation after notice thereof.

The respondent, relying upon the correctness of the official motor vehicle report, requested payment of the additional premium to which it was entitled under the Assigned Risk Plan. As a result of correspondence from the producer of record indicating that Robert Mackey, Jr. did not have a driving violation, the respondent agreed to extend the time for payment of the additional premium in order to give the insured an opportunity to clear up the matter. After the respondent sent a copy of the motor vehicle report to the producer showing the offense, it heard nothing further from the insured or the producer of record, and had the right to assume that the report was no longer being questioned. The possession by the respondent of the motor ve-

hicle report was *prima facie* evidence that the information therein contained was correct. It was reasonable for the respondent to rely thereon in the absence of any contrary showing by the insured. As a matter of fact, the respondent in the letter enclosing a copy of the motor vehicle report, sought the aid of the producer in clearing up the discrepancy between the report and the statement of the insured. Under the circumstances the jury could reasonably find that there was no further duty upon the respondent to make a more extensive investigation into the alleged driving violation of Robert Mackey, Jr.

The appellants complain that the respondent did not introduce into evidence the policy provisions concerning the method provided therein for the cancellation of said policy, and because of such failure there was no proof that it cancelled the policy in the manner provided therein. The evidence shows the policy in question was delivered to Elizabeth Mackey and by her was turned over to an attorney representing certain of the appellants. If the policy contained any provisions beneficial to the appellants with respect to cancellation, it could have been introduced into evidence by them. The trial judge ruled and charged the jury that the statutes provided the circumstances under which the policy could be cancelled and the manner thereof. He submitted to the jury as a question of fact, whether there was compliance by the respondent with the statutes. There was no error on the part of the trial judge in refusing the motion of the appellant for a directed verdict on the ground that the respondent had not introduced the policy provisions with reference to the cancellation.

The appellants moved for judgment *non obstante veredicto* on the ground that the respondent had failed to prove compliance with Sections 18 and 19 of the Assigned Risk Plan in that the notice of cancellation did not contain a statement that the insured had the right to appeal as therein set forth. At the time the appellants made a motion for a directed verdict in their favor, such was on grounds

other than the failure to comply with Sections 18 and 19 of the Assigned Risk Plan. We have held that a motion for judgment *non obstante veredicto* may be granted only upon one of the grounds of a motion for the direction of a verdict made during the trial. *Southern Railway Co. v. Wilkinson Trucking Co.*, 243 S. C. 150, 132 S. E. (2d) 491. It was stated in *Standard Warehouse Co. v. Atlantic Coast Line Railway Co.*, 222 S. C. 93, 71 S. E. (2d) 893, that a motion for judgment *non obstante veredicto* "simply takes us back to the point in the trial when a motion was made for a directed verdict, and is limited to those grounds". It follows there was no error on the part of the trial judge in refusing a motion for judgment *non obstante veredicto* on the ground stated.

The issues of fact in this case were properly submitted to the jury with a full and correct charge by trial judge. The evidence supports the verdict of the jury that the policy in question was properly and effectively cancelled, thereby relieving the respondent from any liability thereunder. Thus it becomes unnecessary for us to consider the appellants' additional assigments of error.

The execeptions of the appellants are overruled and the judgment below is,

Affirmed.

LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.

BUSSEY, J., concurs in result.