2288

Duke K. JOHNSON and Joan M. Johnson, Richard H. and Dana Benson Brant, Joel M. and Deborah B. Brockman, Ray Collins, George F. and Connie S. Crane, Thomas J. and Kathryn D. Cunningham, Margaret S. Davenport, Tracy Woodrow, Jr. and Loyce V. Dees, William J. and Sara T. Dunn, Edgar N. and Frances Patricia Elliott, Vivian Gamble, Louis F. and Patricia F. Gantt, Lawrence L. and Princess A. Gentry, Danny B. and Marilyn M. Grey, Thomas G. and Shirley B. Hickman, Jacob P. and Shelby H. Jumper, Randy E. and Jackie B. Lollis, Vickie Lynn Lucas (Benson), David B. and Margaret E. McCanless, Doris O. McClain, William T. McDowell, Jr., Barry M. and Wynndy McKinney, Lloyd A.

Merritt, Mildred R. Mitchell (Gossett), Arthur M. and Penelope K. Pace, Lee Samuel Pate, III, Richard J. and Alice E. Ponce, William L. Powell, Robert L. and Terrye E. Raines, Steve and Hilda C. Richard, Carlton R. and Barbara B. Riddle, William C. Robertson, William D. and Mary Ethel L. Singleton, James G. and June W. Thompson, Robert J. and Aloha W. Vance, Danny H. and Pamela J. Waters, and James E. and Janice L. Wright, Respondents, of whom Clyde J. Atwood and Bernice J. Atwood, L.J. Solesbee and Betty S. Solesbee, Larry L. Stewart and Linda B. Stewart are Appellants v. HOECHST CELANESE CORPORATION, and Daniel International Corporation, d/b/a Daniel Construction Company, of whom Hoechst Celanese Corporation is Respondent.

(453 S.E. (2d) 908)

Court of Appeals

*William A. Jordan* and *Cecil H. Nelson, Jr.,* of *Nelson & Jordan; J. Kendall Few* and *John C. Few,* of *Few & Few,* Greenville, *for appellants.*

*L. Gray Geddie, Jr.* and *Ronald E. Cardwell*, of *Ogletree, Deakins, Nash, Smoak & Stewart*, Greenville, *for respondent.*

Heard Dec. 7, 1994.

Decided Jan. 9, 1995.

*Per Curiam:*

The plaintiffs in this tort action asserted claims of nuisance, trespass, negligence, and strict liability for the alleged contamination of their properties located in the Pineforest Subdivision of Greenville County. The plaintiffs alleged Hoechst Celanese Corporation dumped chemicals on land located on Hoechst Celanese property, and the chemicals migrated off the property through the air, ground, and surface water, contaminating their land.

## I.

Eighty-eight cases were consolidated for trial with the liability and damage issues, bifurcated. A central issue in the case involved the geographical location of the property of each plaintiff in relation to contaminated water or land, and/or their inclusion in or exclusion from "plumes" of alleged groundwater contamination. These "plumes," detailed on diagrams prepared by experts who testified in the case, purported to show the migration of toxicity over time.

Very able counsel tried this complex litigation for three weeks. Numerous experts testified, using diagrams and subdivision plats or drawings for illustration. The plaintiffs' exhibits, alone, numbered in excess of 92. Though the cases were consolidated, there was no agreement among the parties that each plaintiff fit into a particular liability or damage category, so as to require extrapolation of verdict to individual plaintiffs based upon a representation plaintiff in that category.

The categories were five in number. One category included those properties which the defendant claimed would be the only ones within a "plume." Another category consists of those properties that would not be affected. Plaintiffs' experts grouped the third and fourth categories as those properties that would be affected by the years 1995 and 2020, respectively. Finally, during the trial, plaintiffs' counsel argued a fifth category consisting of two plaintiffs, the Brockmans and

Cunninghams, because they live on or in close proximately to a creek which traverses the subdivision. These plaintiffs would have been within the 2020 plume of groundwater contamination, but they claimed their properties were presented affected by the creek. For example, the record contains Mrs. Brockman's testimony that the creek flooded onto her property, the property behind her, and across the street during heavy rains (the Cunninghams live diagonally across the stream behind the Brockman property).

As the liability portion of the trial neared conclusion, the trial judge advised counsel he intended to give the jury a color-coded map as a court exhibit which depicted the location of each plaintiff using the classifications argued by the parties. The court instructed the parties to prepare such an exhibit and corresponding verdict form. The exhibit as used by the court consisted of a blownup copy of a tax map of the subdivision, with a clear plastic overlay. Different colored dots were then stuck onto the overlay to delineate the five categories of property. The court's exhibit and verdict form were reviewed by the parties before they were given to the jury, and after specific inquiry by the court, there was no objection to them. After the judge charged the jury, instructing it on the use of the map and verdict form, plaintiffs' counsel made three objections to the charges. None of these objections were addressed to either the court's exhibit or the verdict form.

The jury returned a defense verdict against all plaintiffs outside the 1995 plume, with the exception of the Brockmans and Cunninghams. At this point, plaintiffs' counsel moved to reopen the judgment with respect to three property owners, the appellants (Atwoods, Stewarts, Solesbees). These three landowners had been properly classified in the 2020 plume. However, counsel contended the three landowners should have been designated with the Brockmans and Cunninghams (as "creek plaintiffs") because the creek was located on or next to their properties. They argued the verdict demonstrated the jury found on trespass and nuisance theories for all plaintiffs identified as being on the creek or affected by the creek when it flooded. Therefore, counsel moved to reopen testimony regarding liability to allow the three plaintiffs to testify as to the effect of the creek on their properties. The court held its ruling in abeyance pending the damages phase of the trial.

After the damages verdict was returned, the three land-owners filed a JNOV motion, in which they allege the map and verdict form inadvertently failed to designate them as "creek plaintiffs." The landowners contended the court should use its broad discretionary power to remedy this inequity because the verdicts against them were inconsistent with the other plaintiffs similarly situated. The JNOV motion was denied. The landowners then moved for reconsideration of the denial of the JNOV or, in the alternative, a new trial. This motion was then denied.

## II.

On appeal, the landowners contend the trial court erred in denying its motion for JNOV. Rule 50(b), SCRCP, provides the following:

A party *who has moved for a directed verdict* may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict. . . . (Emphasis added.)

If a party fails to make a directed verdict motion before the jury retires, the party cannot subsequently move for JNOV. *Ballew v. Liberty Life Ins. Co.*, 270 S.C. 301, 241 S.E. (2d) 907 (1978); *Government Employees Ins. Co. v. Mackey*, 260 S.C. 306, 195 S.E. (2d) 830 (1973). The trial court properly denied the motion for JNOV, because the landowners did not move for a directed verdict. The landowners argue that no such motion could have been made in this instance because the error came later in the trial. This argument simply highlights the fact that a motion for judgment notwithstanding the verdict was not the appropriate vehicle to address the alleged error.[1]

## III.

The landowners next contend the trial court erred in failing to grant a new trial. They assert the court exhibit and verdict

---

[1] During oral argument, the landowners asserted the trial judge misconstrued the available remedies and denied relief solely for the reason that plaintiffs' counsel did not move for a directed verdict. This argument is without merit because after the liability verdict was rendered and in the written motion for reconsideration, plaintiffs' counsel argued the same grounds for a new trial it now asserts on appeal. The trial judge's denial of reconsideration specifically denies any motion for a new trial as well as the motion for JNOV.

form incorrectly located the creek in relation to their properties and, as a result, the jury returned a verdict against them.

We first note the court's exhibit was not prepared or displayed to the jury as evidence, but only as a guide to enable them to systematically address the many cases tried at the same time. As such, the exhibit was not intended as an accurate depiction of the precise location of the stream in relation to properties. Rather, it categorized the plaintiffs in accordance with the views argued by the parties during the course of the trial.

We also note the landowners could have objected to the map and verdict form during the trial. Counsel discussed the classifications of the plaintiffs to be placed on the exhibit and had an opportunity to review it. There was no objection to the map or verdict form, nor was there an objection to the trial court's instructions to the jury on the use of the map and verdict form. The landowners did not call any purported error to the court's attention until after the liability verdict was rendered. Because they did not raise the alleged error at the first opportunity, we hold the landowners failed to preserve any issue regarding the court's exhibit and verdict form. *See Vaughn v. City of Anderson*, 300 S.C. 55, 386 S.E. (2d) 297 (Ct. App. 1989) (failure to object to jury charge waives any alleged error in the charge); *Ramos v. Hawley*, 316 S.C. 534, 451 S.E. (2d) 27 (Ct. App. 1994) (failure of party to object to admission of photographs with notations on back waived right to object on appeal).

Although we view any alleged error with the map and verdict form as a trial error which must be preserved for appeal, the landowners argue a new trial should have been granted because the verdicts were inconsistent and against the weight of the evidence. We disagree.

The decision of whether to grant a new trial is left to the sound discretion of the trial judge. *E.g., Rush v. Blanchard*, 310 S.C. 375, 426 S.E. (2d) 802 (1993). The burden to show an abuse of discretion lies with the appellant. *E.g., Watson v. United States Rubber Co.*, 260 S.C. 129, 194 S.E. (2d) 395 (1973). Under the thirteenth juror doctrine, a trial court may grant a new trial if the judge believes the verdict is unsupported by the evidence. *Folkens v. Hunt*, 300 S.C. 251, 387 S.E. (2d) 265 (1990). Similarly, a new trial may be

granted if the verdict is inconsistent and reflects the jury's confusion. *Johnson v. Parker*, 279 S.C. 132, 303 S.E. (2d) 95 (1983).

A trial judge's order denying a new trial will not be disturbed unless the decision is wholly unsupported by the evidence, or the conclusion reached is controlled by an error of law. *Folkens*, 300 S.C. 251, 387 S.E. (2d) 265. We find no basis for reversal of the trial judge's denial of a new trial in this record. The trial judge was correct in refusing relief based upon the court's exhibit for the reasons set forth above. We also hold the verdict is supported by the evidence. Essentially, the landowners argue they should have recovered on their trespass and nuisance claims because the Brockmans and Cunninghams recovered on these claims. We disagree.

First, the trial court directed a verdict against all plaintiffs not within at least the 1995 plume on the trespass claim. Plaintiffs' counsel only excepted the Brockmans and Cunninghams from the entry of directed verdict against all 2020 plaintiffs, which included the appealing landowners. These landowners have not appealed from the entry of directed verdict against them on their trespass claims. Therefore, the directed verdict becomes the law of the case. *See Burton v. County of Abbeville*, 312 S.C. 359, 440 S.E. (2d) 396 (Ct. App. 1994) (unchallenged ruling by the trial court is law of the case).

Second, in order for the appealing landowners to recover under a nuisance theory, it was necessary to prove an unreasonable interference with the use and enjoyment of their property. *See Strong v. Winn-Dixie Stores, Inc.*, 240 S.C. 244, 125 S.E. (2d) 628 (1962) ("A nuisance is 'anything which works hurt, inconvenience, or damages; anything which essentially interferes with the enjoyment of life or property.'" (Citations omitted.)) Only Mrs. Brockman testified concerning a direct impact of the creek upon her property, as well as the Cunningham property. As stated previously, there was no agreement to aggregate landowners who adjoined the creek, and no agreement for extrapolation of verdict on that basis. Therefore, any inference to be derived by the geographical location of the landowners' properties in relation to the creek and the damages allegedly suffered by their neighbors, the Brockmans and Cunninghams, was a fac-

tual issue for the jury to decide. The resolution of evidentiary conflicts is within the province of the jury, not this court. *See, e.g., J.J. Lawter Plumbing v. Wen Chow Int'l Trade & Inv., Inc.*, 286 S.C. 49, 331 S.E. (2d) 789 (Ct. App. 1985).

Accordingly, we affirm the decision of the trial court.

Affirmed.

HOWELL, C.J., CONNOR, J., and HOWARD, Acting Judge, concur.