477 S.E.2d 715

**Mark K. VINSON, Appellant,**

v.

**Patricia HARTLEY, Respondent.**

**No. 2572.**

Court of Appeals of South Carolina.

Submitted Sept. 10, 1996.

Decided Oct. 14, 1996.

394

Michael A. Hart, of Turnipseed & Associates, Columbia, for appellant.

Robert A. McKenzie and Robert M. Cook, II, both of McDonald, McKenzie, Rubin, Miller & Lybrand, Columbia, for respondent.

ANDERSON, Judge:

Mark Vinson (Vinson) sued Patricia Hartley (Hartley) for damages for injuries he alleged he received in an automobile collision with Hartley. Hartley admitted negligence but contested whether the accident was the proximate cause of Vinson's injuries. The jury returned a verdict in favor of Hartley. The trial court denied Vinson's motions for reformation of the verdict, new trial *nisi additur*, and new trial absolute. Vinson appeals the denial of these motions. We affirm.[1]

## *FACTS/PROCEDURAL BACKGROUND*

On September 26, 1992, Vinson and Hartley were involved in an automobile accident in Columbia, South Carolina. Hart-

---

1. Because oral argument would not aid the Court in resolving the issues, we decide this case without oral argument.

ley made a U-turn on Lady Street and struck Vinson, who saw Hartley completing the U-turn and followed her until she pulled over. When Vinson left the scene, he felt fine except for a headache. He did not complain of any injuries at the scene. No evidence was introduced that Vinson went to the emergency room after the accident or ever went to the hospital. Vinson also did not need an ambulance at the scene.

The next day Vinson was in pain, had a headache, and his back, neck, and shoulders were sore. Approximately one week later, two of his teeth chipped.

Vinson did not immediately seek medical treatment, but first consulted an attorney. Instead of seeing his long-time health care givers, Vinson sought treatment from Dr. Joseph Matthews, a medical doctor, and Dr. Paul Carlson, a dentist. Vinson was referred by his attorney to these medical providers.

In Hartley's answer, she denied Vinson was injured in the collision. She further denied her alleged wrongdoing was the proximate cause of Vinson's injuries.

During opening statements, defense counsel admitted Ms. Hartley was at fault. He stated she made a U-turn and ran into the back of Vinson's car. However, he argued Vinson did not indicate he was hurt at the scene and did not go to his family doctor for treatment. Defense counsel stated Vinson was "not injured as a result of this accident, and certainly was not injured as much as he wants you to think he was injured."

Vinson called two witnesses: himself and his dentist, Dr. Carlson. Hartley called no witnesses, but her counsel cross-examined both of Vinson's witnesses at length. As part of his damages, Vinson introduced bills for physical therapy, drugs, and dental work. Included in the $2650 dentist's bill was a charge for a partial denture.

Vinson had experienced a significant amount of dental work prior to the accident, including the installation of a partial denture, tooth extractions, and a root canal. Although Vinson claimed dental injuries, he admitted that he did not hit his mouth or do anything during the accident that would have injured his teeth. His teeth were not chipped at that time. Vinson did not know when his partial cracked and could not

tell the jury it was cracked in the accident. He was not even aware his partial was cracked until Dr. Carlson told him. His teeth chipped or broke off about a week or ten days after the accident.

Additionally, Vinson stated he missed time from work as a result of the accident. Evidence concerning a lost wages claim was developed during direct examination. However, Vinson acknowledged he was not working at the time of the accident. He had earlier testified under oath in his deposition that he had lost no time from work and was not making a claim for lost wages. Eventually, Vinson withdrew his claim for lost wages.

Dr. Carlson examined Vinson on October 6, 1992. At the time, two of Vinson's teeth were broken off and he had a broken partial denture which Vinson told him had been broken in an automobile accident. Dr. Carlson put crowns on the two broken teeth and replaced the partial denture. He testified that Vinson's broken teeth and partial plate were "most probably" caused by the accident. Yet, Carlson had not seen Vinson previously and did not know the condition of Vinson's dental work prior to the accident.

During closing arguments, defense counsel argued about the credibility of witnesses and Vinson's referral to the doctors by his attorney. There was no objection to the argument.

In the jury charge, the court instructed the jury, without objection:

> The defendant in this case has admitted that they were negligent; so there are two things that you have to decide. Was the plaintiff personally injured; and if so, were those injuries caused by this negligence?
>
> . . . .
>
> [T]he defendant has admitted she was negligent. You have to decide whether or not the injuries claimed by the plaintiff were caused by the negligence of the defendant. That's a concept called proximate cause.

A general charge was given to the jury in reference to credibility of witnesses.

After a defense verdict, Vinson moved for judgment *non obstante veredicto* and a new trial pursuant to the "Thirteenth

Juror" doctrine. After colloquy *inter sese* court and counsel, these motions were denied. Subsequently, Vinson filed a motion to reform the jury verdict to conform to instructions and for new trial *nisi additur* or, in the alternative, for a new trial absolute. The trial court denied the motions without a hearing.

## ISSUE

Did the trial court err in denying appellant Vinson's motions for reformation of the verdict, new trial *nisi additur*, or in the alternative, new trial absolute?

## LAW/ANALYSIS

Vinson argues the trial court erred in failing to reform the verdict to one for the plaintiff because a defense verdict was inconsistent with Hartley's admission of liability and the court's instructions. He asserts that because he presented evidence of his damages he should have received a verdict in his favor. He contends he is entitled to reformation of the verdict via a new trial *nisi additur*. Alternatively, he seeks a new trial absolute.

Hartley argues that although she admitted her fault in causing the accident, she contested causation and damages. She contends the jury had to assess the credibility of Vinson and his dentist as to Vinson's alleged physical injuries and whether those injuries were caused by the accident. She avers the defense verdict was amply supported by the evidence presented and the trial court's instructions, and was consistent with a jury finding that Vinson's alleged injuries were not related to the accident. Hartley maintains that, as a result, the trial court correctly denied Vinson's motion to reform the verdict and grant a new trial *nisi additur*, or alternatively, a new trial absolute.

## I. PROXIMATE CAUSE

To prevail in an action founded in negligence, the plaintiff must establish three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately caused by a breach of duty. *Newton v. South*

*Carolina Pub. Rys. Comm'n,* 312 S.C. 107, 439 S.E.2d 285 (Ct.App.1993), *rev'd on other grounds,* 319 S.C. 430, 462 S.E.2d 266 (1995). If the plaintiff fails to prove any one of these elements, the action will fail. *Id.* Actionable negligence is based upon the breach of duty to do or refrain from doing some particular act. *Hodge v. Crafts–Farrow State Hosp.,* 286 S.C. 437, 334 S.E.2d 818 (1985). A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed. *Horne v. Beason,* 285 S.C. 518, 331 S.E.2d 342 (1985). The damages allegedly sustained must be shown to have been proximately caused, i.e. causally connected, to the breach of duty in order to warrant a recovery. *Id.* If one neglects a duty which proximately causes injury to another, recovery is warranted. *Hodge, supra.*

■ In a negligence action, the plaintiff must prove proximate cause. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993); *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 393 S.E.2d 914 (1990). Negligence is not actionable unless it is a proximate cause of the injury. *Hanselmann v. McCardle,* 275 S.C. 46, 267 S.E.2d 531 (1980). Proof of proximate cause requires proof of both causation in fact and legal cause. *Rush, supra;* *Oliver v. South Carolina Dep't of Hwys. and Pub. Transp.,* 309 S.C. 313, 422 S.E.2d 128 (1992). Causation in fact is proved by establishing the injury would not have occurred "but for" the defendant's negligence. *Rush, supra; Oliver, supra; Bramlette, supra; Thomas v. South Carolina Dep't of Hwys. and Pub. Transp.,* 320 S.C. 400, 465 S.E.2d 578 (Ct.App.1995). Legal cause is proved by establishing foreseeability. *Oliver, supra; Bramlette, supra.*

■ The touchstone of proximate cause in South Carolina is foreseeability. *Koester v. Carolina Rental Ctr., Inc.,* 313 S.C. 490, 443 S.E.2d 392 (1994); *Young v. Tide Craft, Inc.,* 270 S.C. 453, 242 S.E.2d 671 (1978). Foreseeability is determined by looking to the natural and probable consequences of the act complained of. *Koester, supra.* A plaintiff therefore proves legal cause by establishing the injury in question occurred as a natural and probable consequence of the defendant's negligence. *Bramlette, supra; Greenville Memorial Auditorium v. Martin,* 301 S.C. 242, 391 S.E.2d 546 (1990); *Childers v.*

*Gas Lines, Inc.,* 248 S.C. 316, 149 S.E.2d 761 (1966). Although foreseeability of some injury from an act or omission is a prerequisite to establishing proximate cause, the plaintiff need not prove that the person charged with negligence should have contemplated the particular event which occurred. *Bramlette, supra; Childers, supra.* It is sufficient that he should have foreseen his negligence would probably cause injury to someone. *Greenville Memorial Auditorium, supra; Childers, supra.*

A negligent act or omission is a proximate cause of injury if, in a natural and continuous sequence of events, it produces the injury, and without it, the injury would not have occurred. *Crolley v. Hutchins,* 300 S.C. 355, 387 S.E.2d 716 (Ct.App.1989). Where the injury complained of is not reasonably foreseeable there is no liability. *Woody v. South Carolina Power Co.,* 202 S.C. 73, 24 S.E.2d 121 (1943); *Crolley, supra.* In order for conduct to amount to negligence for which compensation can be collected, the actor must have foreseen, or by the exercise of ordinary care should have foreseen, the probability that his conduct would likely cause injury to another. *Hodge v. Crafts–Farrow State Hosp.,* 286 S.C. 437, 334 S.E.2d 818 (1985). One is not charged with foreseeing that which is unpredictable or which would not be expected to happen as a natural and probable consequence of the defendant's negligent act. *Woody, supra; Crolley, supra.* Foreseeability is to be judged from the perspective of the defendant at the time of the negligent act, not after the injury has occurred. *Crolley, supra.*

Proximate cause is the efficient or direct cause of an injury. *See Clark v. Ross,* 284 S.C. 543, 328 S.E.2d 91 (Ct.App.1985); *Willis v. Floyd Brace Co.,* 279 S.C. 458, 309 S.E.2d 295 (Ct.App.1983). Negligence is deemed to be the proximate cause of an injury when, without such negligence, the injury would not have occurred or could have been avoided. *Hughes v. Children's Clinic, P.A.,* 269 S.C. 389, 237 S.E.2d 753 (1977); *Willis, supra.* The issue of proximate cause may be resolved by direct or circumstantial evidence. *Mahaffey v. Ahl,* 264 S.C. 241, 214 S.E.2d 119 (1975); *Willis, supra.*

■ Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence. *Clark v. Ross*, 284 S.C. 543, 328 S.E.2d 91 (Ct.App. 1985). *See also Oliver v. South Carolina Dep't of Hwys. and Pub. Transp.*, 309 S.C. 313, 422 S.E.2d 128 (1992) (legal cause component of proximate cause is ordinarily question of fact for jury); *Graham v. Whitaker*, 282 S.C. 393, 321 S.E.2d 40 (1984) (in negligence action, issues of negligence, contributory negligence, and proximate cause are generally questions for the jury and, if more than one reasonable inference can be drawn from the evidence, the trial judge is required to submit the issues to the jury); *Childers v. Gas Lines, Inc.*, 248 S.C. 316, 149 S.E.2d 761 (1966) (questions of proximate cause are normally within province of jury); *Hill v. York County Sheriff's Dep't*, 313 S.C. 303, 437 S.E.2d 179 (Ct.App.1993) (proximate cause is ordinarily question of fact for jury). The particular facts and circumstances of each case determine whether the question of proximate cause should be decided by the court or by the jury. *Newton v. South Carolina Pub. Rys. Comm'n*, 312 S.C. 107, 439 S.E.2d 285 (Ct.App.1993). Only when the evidence is susceptible to only one inference does it become a matter of law for the court. *Oliver, supra. See also Newton, supra* (only in rare or exceptional cases may the issue of proximate cause be decided as a matter of law).

## II. THIRTEENTH JUROR DOCTRINE

■ Under the "thirteenth juror" doctrine, a trial judge may grant a new trial absolute when he finds the evidence does not justify the verdict. This ruling has also been termed a granting of a new trial upon the facts. *See Gastineau v. Murphy*, 323 S.C. 168, 181, 473 S.E.2d 819, 827 (Ct.App.1996).

The seminal case stating the "thirteenth juror" doctrine is *Worrell v. South Carolina Power Co.*, 186 S.C. 306, 195 S.E. 638 (1938). *Worrell* states:

Nor does it follow that because under the law the trial judge is compelled to submit the issues to the jury, he cannot grant a new trial absolute. As has often been said,

the trial judge is the thirteenth juror, possessing the veto power to the Nth degree, and, it must be presumed, recognizes and appreciates his responsibility, and exercises the discretion vested in him with fairness and impartiality. *Worrell,* 186 S.C. at 313–14, 195 S.E. at 641.

A review of the "thirteenth juror" doctrine was undertaken by the appellate entity in *Folkens v. Hunt,* 300 S.C. 251, 387 S.E.2d 265 (1990):

This Court has had an opportunity to reconsider the thirteenth juror doctrine on several occasions. Each time we have refused to abolish the doctrine. We have also refused to require trial judges to explain the reasons for the ruling. The thirteenth juror doctrine is a vehicle by which the trial court may grant a new trial absolute when he finds that the evidence does not justify the verdict. This ruling has also been termed granting a new trial upon the facts. *S.C. Highway Dept. v. Townsend,* 265 S.C. 253, 217 S.E.2d 778 (1975). The effect is the same as if the jury failed to reach a verdict. The judge as the thirteenth juror "hangs" the jury. When a jury fails to reach a verdict, a new trial is ordered. Neither judge nor the jury is required to give reasons for this outcome. Similarly, because the result of the "thirteenth juror" vote by the judge is a new trial rather than an adjustment to the verdict, no purpose would be served by requiring the trial judge to make factual findings.

A trial judge's order granting or denying a new trial upon the facts will not be disturbed unless his decision is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law. *South Carolina State Highway Department v. Clarkson,* 267 S.C. 121, 226 S.E.2d 696 (1976). When an order granting a new trial is before this Court, our review is limited to the consideration of whether evidence exists to support the trial court's order. *South Carolina Department of Highways & Public Transportation v. Mooneyham,* 275 S.C. 205, 269 S.E.2d 329 (1980).

*Folkens,* 300 S.C. at 254–55, 387 S.E.2d at 267.

The trial judge, sitting as the thirteenth juror charged with the duty of seeing that justice is done, has the authority to grant new trials when he is convinced that a new trial is necessitated on the basis of the facts in the case.

*Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984). Traditionally, in South Carolina, circuit court judges have the authority to grant a new trial upon the judge's finding that justice has not prevailed. *Todd v. Owen Indus. Prods., Inc.,* 315 S.C. 34, 431 S.E.2d 596 (Ct.App.1993). Similarly, the judge may grant a new trial if the verdict is inconsistent and reflects the jury's confusion. *Johnson v. Parker,* 279 S.C. 132, 303 S.E.2d 95 (1983). *See also Johnson v. Hoechst Celanese Corp.,* 317 S.C. 415, 453 S.E.2d 908 (Ct.App.1995) (under "thirteenth juror doctrine," trial court may grant new trial if judge believes verdict is unsupported by evidence and, similarly, new trial may be granted if verdict is inconsistent and reflects jury's confusion). In ruling on a new trial motion, a trial judge has the discretionary power to grant a new trial absolute or *nisi* in a law case upon his disapproval of the verdict on factual grounds, and in this role he has been recognized and designated as the "thirteenth juror." *South Carolina State Hwy. Dep't v. Townsend,* 265 S.C. 253, 217 S.E.2d 778 (1975). Such discretion is "founded upon the facts, the evidence, the witnesses, the trial circumstances, the verdict and the judge's view of them . . . ." *Fallon v. Rucks,* 217 S.C. 180, 189, 60 S.E.2d 88, 92 (1950).

### III. NEW TRIAL ABSOLUTE

A trial court may grant a new trial absolute on the ground that the verdict is excessive or inadequate. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993). The jury's determination of damages, however, is entitled to substantial deference. *Id.* The trial judge must grant a new trial absolute if the amount of the verdict is grossly inadequate or excessive so as to shock the conscience of the court and clearly indicates the figure reached was the result of passion, caprice, prejudice, partiality, corruption or some other improper motives. *See Cock–n–Bull Steak House, Inc. v. Generali Ins. Co.,* 321 S.C. 1, 466 S.E.2d 727 (1996); *McCourt by and Through McCourt v. Abernathy,* 318 S.C. 301, 457 S.E.2d 603 (1995); *Allstate Ins. Co. v. Durham,* 314 S.C. 529, 431 S.E.2d 557 (1993); *O'Neal v. Bowles,* 314 S.C. 525, 431 S.E.2d 555 (1993); *Rush, supra.* The failure of the trial judge to grant a new trial absolute in this situation amounts to an abuse of discretion and on appeal this Court will grant a new trial

absolute. *Weir v. Citicorp Nat'l Servs., Inc.*, 312 S.C. 511, 435 S.E.2d 864 (1993); *Allstate, supra; O'Neal, supra.*

 The grant or denial of new trial motions rests within the discretion of the trial judge and his decision will not be disturbed on appeal unless his findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. *Umhoefer v. Bollinger*, 298 S.C. 221, 379 S.E.2d 296 (Ct.App.1989). *See also Boozer v. Boozer*, 300 S.C. 282, 387 S.E.2d 674 (Ct.App.1988) (Court of Appeals has no power to review trial court's ruling unless it rests on basis of fact wholly unsupported by evidence or is controlled by error of law). In deciding whether to assess error to a court's denial of a motion for a new trial, we must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Umhoefer, supra.*

## IV. NEW TRIAL *NISI ADDITUR*

 The trial judge alone has the power to grant a new trial *nisi* when he finds the amount of the verdict to be merely inadequate or excessive. *McCourt by and Through McCourt v. Abernathy*, 318 S.C. 301, 457 S.E.2d 603 (1995); *O'Neal v. Bowles*, 314 S.C. 525, 431 S.E.2d 555 (1993). Compelling reasons, however, must be given to justify invading the jury's province in this manner. *Bailey v. Peacock*, 318 S.C. 13, 455 S.E.2d 690 (1995); *Pelican Bldg. Ctrs. v. Dutton*, 311 S.C. 56, 427 S.E.2d 673 (1993).

 While the trial judge may not impose his will on a party by substituting his judgment for that of the jury, he may give the party an option in the way of *additur* or *remittitur*, or, in the alternative, a new trial. *Jones v. Ingles Supermarkets, Inc.*, 293 S.C. 490, 361 S.E.2d 775 (Ct.App.1987). The consideration of a motion for a new trial *nisi additur* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented. *Patterson v. Reid*, 318 S.C. 183, 456 S.E.2d 436 (Ct.App.1995). The trial judge who heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this Court. *Rush v. Blanchard*, 310 S.C. 375, 426 S.E.2d 802

(1993). Accordingly, great deference is given to the trial judge. *Id.*

The denial of a motion for a new trial *nisi* is within the trial judge's discretion and will not be reversed on appeal absent an abuse of discretion. *McCourt, supra; O'Neal v. Bowles,* 314 S.C. 525, 431 S.E.2d 555 (1993). This Court has the duty to review the record and determine whether there has been an abuse of discretion amounting to an error of law. *Bailey, supra; Pelican, supra.*

When a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial judge must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice. *Allstate Ins. Co. v. Durham,* 314 S.C. 529, 431 S.E.2d 557 (1993). Therefore, on appeal of the denial of a motion for a new trial *nisi,* this Court will reverse when the verdict is grossly inadequate or excessive requiring the granting of a new trial absolute. *O'Neal, supra.*

## V. REFORMATION OF JURY VERDICT

A trial court is vested with very limited power to correct a jury verdict which is defective in form, but which in substance clearly and definitively expresses the jury's intentions. However, the trial court can correct, reform, or remold such a verdict so as to express the jury's clear and definitely manifested intention. The correction of a jury verdict may be appropriate in those exceptional situations where it is clear there has been a mere ministerial error in reporting the verdict. *See* 75B Am.Jur.2d *Trial* § 1886 (1992).

A trial court may amend a verdict in matters of form, but not of substance. A change of substance is a change affecting the jury's underlying decision, but a change in form is one which merely corrects a technical error made by the jury. The judge cannot, under the guise of amending the verdict, invade the province of the jury or substitute his verdict for theirs. After the amendment, the verdict must be not what the judge thinks it ought to have been, but what the jury intended it to be. *See* 75B Am.Jur.2d *Trial* § 1886 (1992).

 A party seeking amendment of a verdict must lay a proper foundation by a motion for a new trial. *Anderson v. Aetna Casualty & Sur. Co.*, 175 S.C. 254, 178 S.E. 819 (1934). An objection that damages are inadequate must be raised in a motion for a new trial or the objection is waived and cannot be argued on appeal. *Id.* Although the court may amend a verdict, the amendment must be accompanied with an option of a new trial *nisi* to the party against whom the amendment militates. *Id.* The trial court's authority to correct, modify, or interfere with the jury's verdict is embraced in and limited to the power to grant new trials. *Id.* The court may grant or refuse a new trial or, in a proper case, may grant a new trial *nisi*, but should do one thing or the other. *Id.* For the court to amend a verdict without an accompanying option of a new trial *nisi* to the party against whom the amendment operates adversely amounts to an invasion of the province of the jury. *Id.* "The law rather forbids this court assuming to take upon itself the powers, duties, rights, and privileges of a jury." *Id.* at 282, 178 S.E. at 829–30.

In *South Carolina State Hwy. Dep't v. Miller*, 237 S.C. 386, 117 S.E.2d 561 (1960), the South Carolina Supreme Court addressed amendment of a verdict by the trial court:

> "The judge cannot, under the guise of amending the verdict, invade the exclusive province of the jury or substitute his verdict for theirs. After the amendment the verdict must be not merely what the judge thinks it ought to have been, but what the jury intended it to be. Their actual intent, and not his notion of what they ought to have intended, is the thing to be expressed and worked out by the amendment."

*Miller*, 237 S.C. at 394–95, 117 S.E.2d at 565.

 *Any* question affecting the verdict should be raised by a motion for a new trial. *Ulmers v. Willingham*, 238 S.C. 503, 120 S.E.2d 859 (1961); *Lites v. Taylor*, 284 S.C. 316, 326 S.E.2d 173 (Ct.App.1985).

 It is apodictic that this case does not involve reformation of verdict issues. The quintessential case presenting the issue of reformation of a jury verdict is a jury verdict for "no dollars." The court cannot lawfully enter judgment on an inconsistent or incomplete verdict. *Johnson*

*v. Phillips,* 315 S.C. 407, 433 S.E.2d 895 (Ct.App.1993), *rev'd in part on other grounds,* 318 S.C. 453, 458 S.E.2d 427 (1995). When the jury returns a verdict of "no damages" for the plaintiff, the judge should inform the jury that he cannot legally accept the verdict, and should return the case to them with instructions explaining nominal and compensatory damages and charging them either to assess a definite dollar amount in damages (nominal or actual) for the plaintiff or to return a verdict for the defendant. *Id.* South Carolina law requires the jury to be the sole judge of issues of fact, including the issue of damages. *Id.* at 416–17, n. 7, 433 S.E.2d at 901, n. 7. *See, e.g., Collier v. Green,* 244 S.C. 367, 137 S.E.2d 277 (1964); *Gwathmey v. Foor Hotel Co.,* 121 S.C. 237, 113 S.E. 688 (1922). The Court in *Johnson* stated:

> To permit the court to "correct" or "construe" a jury finding of no damages would, as a practical matter, displace the jury as the fact finder by allowing the court either to decide how the jury viewed the facts or to substitute its own view of the facts when the jury's verdict is uncertain. Under our law, where the case is tried to a jury, the judge cannot perform the jury's function for it. If the jury renders an ambiguous verdict, the court must resubmit the case to the jury, not act as a substitute for the jury.

*Johnson,* 315 S.C. at 417, n. 7, 433 S.E.2d at 901, n. 7.

Here, facially, the jury verdict is correct as to form and substance. Moreover, the verdict in this case is not inconsistent or incomplete. As stated in *Johnson,* the court cannot lawfully accept an inconsistent or incomplete verdict. Vinson's contention that this verdict should be reformed is rejected. His reliance on the law of reformation of a jury verdict is misplaced.

Vinson relies on *Page v. Crisp,* 303 S.C. 117, 399 S.E.2d 161 (Ct.App.1990), for the proposition that when liability in a personal injury action is admitted, a plaintiff is entitled to an award of damages, unless the plaintiff completely fails to prove damages. Vinson argues that Hartley admitted liability for the accident and, because he presented evidence of his damages, he should have received a verdict in his favor.

The *Page* decision, however, is distinguishable because the jury in that case returned a verdict in favor of the *plaintiff,*

not the defendant, as is the case here. The plaintiff in *Page* brought an action against the defendants for loss of consortium due to a collision between plaintiff's wife and the defendants. The defendants admitted liability in the automobile accident and a jury awarded plaintiff's wife[2] $44,000 for her injuries. The same jury simultaneously returned a verdict for the plaintiff husband in the amount of "zero dollars." The plaintiff husband appealed from the trial judge's refusal to instruct the jury, after the verdict, to return to the jury room and write a verdict in his favor.

In reversing the trial court, this Court held that the plaintiff husband was entitled to a verdict in some amount as a matter of law. The Court noted that liability was admitted; the evidence relative to damages sustained by the husband was not disputed nor contested; and the damages to which the husband testified were reasonably to have been expected given the seriousness of the injuries and substantial damages sustained by his wife.

Here, the jury returned a verdict in favor of the *defendant*, thereby making a clear and unambiguous finding that Hartley was not liable for Vinson's alleged damages. Accordingly, *Page* is not controlling.

## VI. DISCUSSION

The controlling precedent in the case *sub judice* is *Black v. Hodge*, 306 S.C. 196, 410 S.E.2d 595 (Ct.App.1991). In *Black*, the plaintiff alleged substantial injuries from an admittedly minor collision. No witness directly contradicted the plaintiff's testimony or that of the doctors she called to testify on her behalf. Nevertheless, the jury returned a verdict for the defendant. In affirming the verdict, this Court held that the jury does not have to believe uncontradicted testimony. The Court stated:

Mrs. Black makes several arguments on appeal, but the essential issue is whether the jury was required to accept her uncontradicted testimony that she was injured. Stated

---

**2.** In two separate tort actions, the wife sued the defendants for personal injuries growing out of an automobile accident and the husband brought an action against the same defendants for loss of consortium. The two actions were consolidated for trial.

in the larger sense, the question is simply this: must a trier of fact always believe uncontradicted testimony? The answer to the question is, plainly, no.

The fact that testimony is not contradicted directly does not render it undisputed. *Terwilliger v. Marion,* 222 S.C. 185, 72 S.E.2d 165 (1952). There remains the question of the inherent probability of the testimony and the credibility of the witness or the interests of the witness in the result of the litigation. *Id.* "If there is anything tending to create distrust in his [or her] truthfulness, the question must be left to the jury." *Id.* at 188, 72 S.E.2d at 166.

The fact that the collision between the two vehicles was slight, to say the least, together with the fact that Mrs. Black has an obvious interest in the outcome of the case, is sufficient to cast doubt on the testimony that she was injured. Under the circumstances, the jury had the right to find that she was not injured, and we do not have the right to second-guess the jury. *See Hobgood v. Pennington,* 300 S.C. 309, 313, 387 S.E.2d 690, 692 (Ct.App.1989) ("If there is any evidence to sustain the factual findings implicit in the jury's verdict, this court must affirm.").

*Black,* 306 S.C. at 198, 410 S.E.2d at 596. All of the considerations noted in *Black* are applicable in this situation.

■ Vinson and Dr. Carlson testified regarding the nature of the accident as well as Vinson's claimed injuries and the alleged cause of those injuries. Even if the testimony of Vinson and Dr. Carlson was not directly contradicted, their credibility on these issues was for the jury to determine.

A review of the record reveals there was sufficient evidence from which the jury could have reached a verdict in favor of Hartley. Vinson's own description of the collision showed that it was minor and inconsequential. Vinson stated "as I was driving down the street, all I knew was something happened. I didn't know I was hit at the time; just something happened that I didn't know until, you know, I saw Ms. Hartley's car, and she was making a U-turn." On cross-examination, he agreed the impact was in the nature of a "bump." While questioning Vinson, defense counsel introduced photographs of Vinson's car to demonstrate the small amount of damage.

Vinson's testimony as to his dental injuries shows they could have been caused by something other than the accident. He admitted he did not do anything in the accident which would have caused injury to his mouth. The jury could well have concluded the dental injuries allegedly suffered by Vinson were not caused by his accident with Hartley. Further, no medical doctor testified connecting Vinson's alleged injuries to the accident.

Moreover, Vinson's credibility may have been seriously weakened by his first claiming lost wages, then withdrawing that claim when confronted with deposition testimony which indicated he had no lost wages and was not making such a claim.

Dr. Carlson's testimony also directly undermined Vinson's contention his partial denture broke in the accident. He agreed it would be unlikely for a person to break a partial into two pieces, yet not know it was broken, as Vinson had earlier testified. Carlson also stated a person's teeth can be chipped in any number of ways, including biting down on a piece of ice. Thus, Vinson's own dentist's testimony could have been used by the jury to conclude it was unlikely Vinson's dental problems were caused by his accident with Hartley.

Furthermore, certain inconsistencies came out during Dr. Carlson's testimony which may have brought his credibility into question. He testified that when Vinson went to his office he brought a split partial denture with him. However, Dr. Carlson admitted that when deposed he had stated Vinson did not have the partial plate when he came to the office and Vinson told him the ambulance driver must have taken it.

Dr. Carlson further testified Vinson did not have any trauma to his face, but he did have a laceration inside his mouth. Yet, he later admitted that his office notes, upon which he was relying, did not reflect that Vinson's partial was broken in two or that Vinson had any laceration in his mouth. Given these inconsistencies, the jury could have reasonably questioned Dr. Carlson's credibility as to the cause of Vinson's broken partial and chipped teeth.

Simplistically put, credibility of witnesses was for the jury to determine. The jury could have determined that the medical bills testified to by Vinson were not the result of the

accident which gave rise to this suit. *See Boozer v. Boozer*, 300 S.C. 282, 387 S.E.2d 674 (Ct.App.1988) (trial court did not abuse its discretion in denying plaintiff's motion for new trial based on inadequacy of verdict in personal injury suit where jury could have determined that a portion of medical bills testified to by plaintiff were not result of accident which gave rise to suit).

## CONCLUSION

A review of this record reveals that the trial court's ruling is not "wholly unsupported by the evidence" nor is it "controlled by an error of law." Therefore, we conclude the trial judge did not abuse his discretion in denying Vinson's motions for reformation of the verdict, new trial *nisi additur*, and new trial absolute. Accordingly, the trial judge's order denying Vinson's motions is

**AFFIRMED.**

CURETON and STILWELL, JJ., concur.