548 S.E.2d 220

James RHODES and Jeanette Rhodes, Respondents,

v.

William Marvin McDONALD, formerly d/b/a Southern Vinyl Siding Insulation and Manufacturing Company and Bill Gillespie and Southern Insulation Company, Defendants,

of whom Bill Gillespie and Southern Insulation Company are, Appellants.

No. 3349.

Court of Appeals of South Carolina.

Heard May 9, 2001.

Decided June 4, 2001.

Scott D. Robinson, of Liberty, for appellants.

Robin Stilwell, of Hunter, Tomaszek & Stilwell, of Greenville, for respondents.

GOOLSBY, Judge:

James and Jeanette Rhodes brought this action against Bill Gillespie in his individual capacity and against Southern Insulation Company seeking actual and punitive damages for breach of contract and breach of certain implied warranties. A jury awarded the Rhodeses actual and punitive damages. Gillespie and Southern Insulation appeal, arguing the trial court erred in failing to grant their motions for directed verdict as to Gillespie's individual liability and as to the availability of punitive damages in the breach of contract and breach of implied warranty causes of action. They also contend the trial court erred in submitting an improper special verdict form to the jury. We affirm in part and reverse in part.

## Background Facts/Procedural History

Gillespie owns and operates Southern Insulation Company. In July 1992, the Rhodeses contracted with Southern Insulation to install vinyl siding on their mobile home and to extend the roof over their kitchen. The contract price, including finance charges, totaled $10,834.20.

According to Mrs. Rhodes, shortly after workmen installed the siding, she complained to William McDonald, Gillespie's stepson and employee, about the siding being "all wavy looking." McDonald assured her "it would settle down." The problem with the siding, however, became worse as it separated from the window casings and pulled apart in other places. In addition to the siding problem, "the roof bowed up." These problems prompted her to make dozens of telephone calls to the company office over the next several months.

Eventually, Gillespie came to the Rhodeses' house and promised to fix the problems but did not. After several more phone calls from Mrs. Rhodes, Gillespie returned to the Rhodeses' house. Using profanity, Gillespie once more promised Mrs. Rhodes that he would attend to the problems. Workmen later came and tried nailing the siding into place. In December 1996, Mrs. Rhodes went to Gillespie's office and discussed with him the problems that they continued to have with the roofing and siding. As Mrs. Rhodes left his office, Gillespie "followed [her] all the way outside cussing [her]." Shortly after that, the Rhodeses instituted this action.

At trial, Gillespie testified he had no knowledge of the problems that the Rhodeses were having with their home until they filed the instant action. The only complaint Mrs. Rhodes ever made to him concerned some shutters that she said had faded. He went to her house and advised her how to contact the manufacturer and file a warranty claim with it.

Chris Wimpey, the Rhodeses' expert witness, inspected the home in October 1997. He set the cost of all necessary repairs at $11,464.00.

At the start of trial, Gillespie moved to strike the Rhodeses' claim for punitive damages on the ground that punitive damages were not recoverable on breach of contract and breach of

implied warranty causes of action. The trial court denied the motion. At the conclusion of all evidence, Gillespie moved for directed verdicts on all counts and reiterated the motion to strike punitive damages as unrecoverable. Additionally, Gillespie moved for a directed verdict as to his individual liability. The trial court denied these motions as well. The case went to the jury with instructions to use special interrogatories to register its verdict.

The jury found in favor of the Rhodeses on all causes of action and awarded them $11,464.50 in actual damages and $27,500.00 in punitive damages.

### . Discussion

### I.

■■ Gillespie and Southern Insulation contend the trial court erred in failing to grant their motion for a directed verdict as to the unavailability of punitive damages on the breach of implied warranty claims. We agree the trial court should not have submitted the issue of punitive damages to the jury.

South Carolina Code sections 36–2–714 and –715 define what damages a buyer may recover under the Uniform Commercial Code for a breach of warranty. Section 36–2–714 states:

(1) Where the buyer has accepted goods and given notification (subsection (3) of § 36–2–607) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.

(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

(3) In a proper case any incidental and consequential damages under the next section (§ 36–2–715) may also be recovered.[1]

Section 36–2–715 states:

(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.[2]

The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible.[3] Where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself.[4]

In our view, the plain language of sections 36–2–714 and 36–2–715 evidences an intent on the part of the legislature to limit damages recoverable for breach of warranty to actual, incidental, and consequential damages. Had the legislature intended that punitive damages be available in breach of warranty cases, they could easily have included a provision providing for the recovery of damages of that kind.

We are further convinced the legislature intended to preclude the recovery of punitive damages in breach of warranty

1. S.C.Code Ann. § 36–2–714 (1976).

2. S.C.Code Ann. § 36–2–715 (1976).

3. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998).

4. *South Carolina Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 136, 538 S.E.2d 285, 288–89 (Ct.App.2000).

cases by the language of South Carolina Code section 36–1–106(1), that provides, in part, that "neither consequential or special nor penal damages may be had except as specifically provided in the act or by other rule of law."[5] The Uniform Commercial Code does not provide anywhere for their recovery in such cases; nor does some "other rule of law" do so. Indeed, the official comment to section 36–1–106 states that one of the purposes of that section is "to make clear that compensatory damages are limited to compensation [and that] [t]hey do not include consequential damages or special damages, or penal damages."[6]

■ We are aware, as noted by the Rhodeses on appeal, that in South Carolina punitive damages are available in breach of contract cases where the breach is accompanied by a fraudulent act.[7] That, however, is not the case before us here.[8]

We therefore reverse the award of punitive damages.

## II.

■ Gillespie next contends the trial court erred in failing to direct a verdict in his favor as to his individual liability. We disagree. It is uncontested Southern Insulation was not incorporated at the time of the contract. Gillespie cites no authority indicating owners of unincorporated companies are entitled to protection from individual liability in the same manner as officers of incorporated entities. Indeed, the general rule is to the contrary.[9]

---

5.  S.C.Code Ann. § 36–1–106 (1976).

6.  S.C.Code Ann. § 36–1–106 cmt. 1 (1976); *see also Novosel v. Northway Motor Car Corp.*, 460 F.Supp. 541 (N.D.N.Y.1978) (noting that punitive damages are not recoverable); *Sims v. Ryland Group, Inc.*, 37 Md.App. 470, 378 A.2d 1 (Md.1977) (holding punitive damages not recoverable under 2–715); *cf.* 11 S.C. Juris. *Damages* §§ 47, 70 (1992) (citing language of the statute).

7.  *See, e.g., Lister v. NationsBank of Delaware, N.A.*, 329 S.C. 133, 494 S.E.2d 449 (Ct.App.1997).

8.  As to their theories of liability, the Rhodeses pled: "Defendants have breached the implied warranties of merchantability, habitability, and fitness for particular purpose as construed by the statutory and case law of this state."

9.  *See* 18A Am.Jur.2d. *Corporations* § 154 (1985) (noting that sole proprietors are responsible for debts and obligations of their businesses).

## III.

Finally, Gillespie and Southern Insulation level an attack on the trial court's submission of special interrogatories to the jury, arguing the form could have led the jury to believe it could award punitive damages on either the breach of contract cause of action or the breach of implied warranty causes of action. This argument was not presented in the first instance to the trial court and, therefore, is not preserved for appellate review.[10] In any case, because we have vacated the award of punitive damages, the issue is now moot.

**AFFIRMED IN PART AND REVERSED IN PART.**

HEARN, C.J., and CONNOR, J., concur.

---

10. *Johnson v. Hoechst Celanese Corp.*, 317 S.C. 415, 453 S.E.2d 908 (Ct.App.1995).