THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT 
 SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED 
 BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Mark New and Karen New,       
Respondents,
 
 
 

v.

 
 
 
Max G. Crosby Construction Co., Inc.,       
Appellant.
 
 
 

Appeal From Dorchester County
Diane Schafer Goodstein, Circuit Court 
 Judge

Unpublished Opinion No. 2004-UP-282
Heard January 13, 2004  Filed April 27, 2004

AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

 
 
 
Stephen L. Brown, of Charleston, for Appellant.
Steven L. Smith, Esquire and Wm. Mark Koontz, both of Charleston, for Respondents.
 
 
 

PER CURIAM:  Purchasers of a home sued the 
 property development company that sold them the home and the construction company 
 that built the home for the structural damages resulting from construction.  
 The construction company, Crosby Construction Company (Crosby Construction), 
 appeals the jury verdict in favor of the purchasers.  We affirm in part, reverse 
 in part, and remand.
FACTS
Crosby Construction was a charter member 
 of the Southern Living Builder Program and agreed to build homes according to 
 Southern Living plans and specifications.  However, Max Crosby, owner of Crosby 
 Construction, testified that Crosby Construction was allowed to alter the Southern 
 Living plans.  Crosby Construction contracted with Greenwood Development Corporation 
 (Greenwood) to build five model homes in Coosaw Creek Country Club in North 
 Charleston, South Carolina.   One of the five homes built by Crosby Construction 
 for Greenwood was the home eventually purchased by Mark and Karen New. 
Crosby Construction and Greenwood agreed 
 to numerous modifications of the Southern Living plans with regards to the house 
 in question.  Specifically, the basement was eliminated, a finished media room 
 was provided, and the master bedroom and kitchen were made larger.  Additionally, 
 rather than utilizing steel beams, as the original Southern Living plans specified, 
 Crosby Construction changed the design to utilize wooden beams, which Max Crosby 
 believed were appropriate.  
Crosby Construction completed the home 
 for Greenwood in June of 1998.  Greenwood used it as a model home, advertised 
 the home as a Southern Living home, and sold the home to the News on October 
 21, 1998.   Crosby Construction had no hand in the sale of the house from Greenwood 
 to the News, and the News contract with Greenwood made no mention of Crosby 
 Construction.   Mark New testified that he and Karen understood they were purchasing 
 a Southern Living home. 
The News discovered several problems with 
 their home.  Most significantly, the News at some point discovered a hump and 
 sag in their second story floor.  Investigation revealed the wood beams Crosby 
 Construction had substituted for the specified steel beams proved inadequate 
 to support the load placed on them.  Crosby Construction sent a subcontractor 
 in to fix the beam causing the sag, however, it was inadequate.   Other problems 
 discovered by the News included a leaking roof, inadequate foundation, an incorrectly 
 sloped yard that did not drain, a bowed exterior wall, cupped and warped floors, 
 a poorly built retention wall, and poor flashing. 
The News brought suit against Greenwood 
 and Crosby Construction, alleging the breach of several implied warranties, 
 negligence, and unfair trade practices.  The News sought actual and punitive 
 damages against Crosby Construction and Greenwood.  Crosby Construction and 
 Greenwood filed answers denying the material allegations and asserting various 
 affirmative defenses.  The News subsequently dismissed the action against Greenwood 
 and chose instead to proceed exclusively against Crosby Construction.
 After directing a verdict against the 
 News on their claim for unfair trade practices, the trial court denied Crosby 
 Constructions directed verdict motions and objections to the charges presented 
 to the jury.  At the conclusion of the four-day trial, the jury returned a verdict 
 against Crosby Construction for $285,942 in actual damages.  Crosby Construction 
 then filed post-trial motions for a JNOV, a new trial absolute, and a new trial 
 nisi remittitur.   These motions were denied.  This appeal follows.
LAW/ANALYSIS
I. STIGMA DAMAGES
Crosby Construction contends the circuit court 
 erred in refusing to grant its motion for directed verdict as to the News claim 
 of diminution in property value, or stigma damages.  Crosby Construction also 
 contends the circuit court erred in failing to grant a new trial absolute where 
 there was no evidence to support the jurys award.  We agree.
A. Directed Verdict
At trial, Crosby Construction moved for 
 a directed verdict on the News claim for stigma damages, arguing there was 
 no testimony regarding the value of the home after repairs and to award both 
 the cost of repairs and stigma damages would amount to double recovery.  The 
 circuit court disagreed, finding Dr. New had testified to the value of the home 
 after all the repairs had been made, amounting to diminution in value.  Crosby 
 Construction contends the circuit court erred in allowing the question of stigma 
 damages to go to the jury.  
In ruling on motions for directed verdict, 
 the trial court is required to view the evidence and the inferences that reasonably 
 can be drawn therefrom in the light most favorable to the party opposing the 
 motion[] and to deny the motion[] where either the evidence yields more than 
 one inference or its inference is in doubt.  Strange v. S.C. Dept of Highways 
 & Pub. Transp., 314 S.C. 427, 429-30, 445 S.E.2d 439, 440 (1994).  We 
 will reverse the trial court only when there is no evidence to support the ruling 
 below.  Id. at 430, 445 S.E.2d at 440.  
Stigma, or diminution in value, damages are generally 
 awarded when there is a permanent injury to real property.  See Gray 
 v. S. Facilities, Inc., 256 S.C. 558, 569, 183 S.E.2d 438, 443 (1971) (holding 
 that [t]he general rule is that in case of an injury of a permanent nature 
 to real property . . . the proper measure of damages is the diminution of the 
 market value by reason of that injury, or in other words, the difference between 
 the value of the land before the injury and its value after the injury).  Thus, 
 where there is a permanent injury to land, damages are based on the diminution 
 in value of the property based on its value before the injury and after the 
 injury.  Yadkin Brick Co. v. Materials Recovery Co., 339 S.C. 640, 645, 
 529 S.E.2d 764, 767 (Ct. App. 2000).  

While proof, with mathematical certainty, of the amount 
 of loss or damage is not required, in order for damages to be recoverable the 
 evidence should be such as to enable the court or jury to determine the amount 
 thereof with reasonable certainty or accuracy.  Neither the existence, causation 
 nor amount of damages can be left to conjecture, guess or speculation. 

Gray, 256 S.C. at 570-71, 183 S.E.2d at 444.
The News presented evidence at trial that 
 repairs to their home would cost $129,930.42.  This figure consisted of estimates 
 to repair the foundation, flashing, roof leaks, ridge beam and holes, landscaping 
 problems, as well as cosmetic damages.  Although the News experts testified 
 that repairing the problems would not give the News the Southern Living home 
 they expected, they stated the problems could all be repaired.  However, one 
 expert opined that an entire new roof would need to be put in place because 
 there would always be leaks even if the current roof were repaired.  
Dr. Mark New testified at trial that he wanted 
 the jury to give him enough money to repair the house.  He also expressed concern 
 that he would have to disclose the structural damage to the house upon resale.   
 Dr. New estimated the value of the home if it were in good condition to be $550,000.   
 When asked to estimate the value of the home in its present condition, Dr. 
 New stated it would be $300,000 to $350,000.   Thus, we interpret Dr. News 
 testimony to state that the difference in value of the home if it had been built 
 in accordance with Southern Living plans and the value of the home in its then 
 current, unrepaired state to be between $200,000 and $250,000.    
Viewing the evidence in the light most favorable 
 to the News, no evidence was presented as to the diminution in value of the 
 home if all the repairs were performed.  Although Dr. New testified regarding 
 the problems disclosing the prior structural damage would pose in trying to 
 sell the house, he did not place a value on the home after repairs were performed.  
 His testimony only addressed the value of the home in its unrepaired state and 
 the value of the home had it been constructed according to the Southern Living 
 plans.  As Crosby Construction argued before the circuit court, allowing recovery 
 for both the cost of repairs and the diminution in value of the home prior to 
 repairs would amount to double recovery.  Further, the failure to present evidence 
 of the diminution in value of the repaired home left the jury to speculate as 
 to the amount of stigma damages.  Because there was no testimony regarding the 
 amount of stigma damages, the circuit court erred in failing to direct a verdict 
 on this theory of recovery. [1]   
 Gray, 256 S.C. at 570-71, 183 S.E.2d at 444; see also Collins 
 Music Co. v. Smith, 332 S.C. 145, 147, 503 S.E.2d 481, 482 (Ct. App. 1998) 
 (noting the general rule that there can be no double recovery for a single injury).  
 Accordingly, we reverse the circuit courts denial of the motion for a directed 
 verdict as to stigma damages.
B. New Trial Absolute
Crosby Construction argues the circuit court erred in failing to 
 grant a new trial absolute because there was no evidence to support the jurys 
 award.  We agree.
The decision to grant or deny a motion 
 for a new trial absolute is within the trial courts discretion and will not 
 be reversed unless the courts decision is wholly unsupported by the evidence 
 or the conclusions reached are controlled by error of law.  Vinson v. Hartley, 
 324 S.C. 389, 405, 477 S.E.2d 715, 723 (Ct. App. 1996).  In determining whether 
 the trial court erred in denying a motion for a new trial, we must look at the 
 testimony and inferences raised therefrom in favor of the nonmoving party.  
 Id.; Welch v. Epstein, 342 S.C. 279, 302-03, 536 S.E.2d 408, 420 
 (Ct. App. 2000).  
The circuit court may grant a new trial absolute 
 in two instances.  The court must grant a motion for a new trial absolute when 
 the verdict is so grossly excessive that it shocks the conscience of the court 
 and clearly indicates the verdict was the result of caprice, passion, prejudice, 
 partiality, corruption, or other improper motive.  Duncan v. Hampton Co. 
 Sch. Dist. No. 2, 335 S.C. 535, 547, 517 S.E.2d 449, 455 (Ct. App. 1999) 
 (quoting Knoke v. South Carolina Dept of Parks, Recreation & Tourism, 
 324 S.C. 136, 141, 478 S.E.2d 256, 258 (1996)).  Alternatively, the trial court 
 may grant a new trial absolute when, sitting as the thirteenth juror, 
 it concludes the jurys verdict is not supported by the evidence.  Duncan, 
 335 S.C. at 547, 517 S.E.2d at 455 (emphasis in original).  However, substantial 
 deference should be given to a jurys determination of damages.  Knoke, 
 324 S.C. at 141, 478 S.E.2d at 258.  
The jury rendered a general verdict in 
 favor of the News in the amount of $285,942.  The evidence presented at trial 
 showed that it would cost $129,930.42 to make the repairs to the home.  Dr. 
 New opined that his home was worth between $200,000 and $250,000 less in its 
 unrepaired state than it would be worth had the home been built to Southern 
 Living specifications.  As discussed above, this estimate does not indicate 
 the depreciation to the home after repairs are made and cannot be considered 
 in isolation.  Giving substantial deference to the jurys verdict, there is 
 not any evidence in the record to support a verdict $155,000 greater than the 
 estimate of damages.  Because there was no evidence to support the amount of 
 the jurys verdict, the circuit court erred by failing to grant Crosby Constructions 
 motion for a new trial absolute.  Accordingly, we reverse the circuit courts 
 denial of the motion and remand the case for a new trial absolute.  
II. Insurance Testimony
Crosby Construction asserts the circuit court erred 
 in admitting into evidence information regarding the insurance related work 
 of one of its experts.  We disagree.  
Generally, the fact that a defendant is protected 
 by insurance from liability in an action for damages shall not be made known 
 to the jury.  Dunn v. Charleston Coca-Cola Bottling Co., 311 S.C. 43, 
 45, 426 S.E.2d 756, 757 (1993).  The rule protects against unfair prejudice 
 in the verdict that might result from the jurys knowledge that the defendant 
 will not have to pay the award amount.  Dunn, 311 S.C. at 45, 426 S.E.2d 
 at 757-58.  However, this general rule does not require evidence of insurance 
 to be kept from the jury where it is offered for some other purpose.  Rule 411, 
 SCRE provides:

Evidence that a person was or was not insured against liability 
 is not admissible upon the issue whether the person acted negligently or otherwise 
 wrongfully.  This rule does not require the exclusion of evidence of insurance 
 against liability when offered for another purpose, such as proof of agency, 
 ownership, or control, or bias or prejudice of a witness.

Rule 411, SCRE.  
Our Supreme Court has adopted a substantial 
 connection analysis to determine whether an experts connection to a defendant 
 insurer is sufficiently probative of witness bias to outweigh the prejudice 
 to the defendant resulting from the knowledge that the defendant carries liability 
 insurance.  Yoho v. Thompson, 345 S.C. 361, 366, 548 S.E.2d 584, 586 
 (2001).  In Yoho, the defendant in a car wreck case was represented by 
 the underinsured motorist carrier, Nationwide Insurance Company.  One of the 
 defendants experts, Dr. Brannon, did a fair amount of consulting work for Nationwide 
 and between ten to twenty percent of his practice included consulting for insurance 
 companies.  Our state Supreme Court reversed the circuit courts refusal to 
 allow Yoho to question Dr. Brannon regarding his potential bias due to his work 
 with insurance companies.  The Court determined the connection between Brannon 
 and Nationwide was substantial enough to permit Yoho to question him about the 
 relationship and potential bias.  Yoho, 345 S.C. at 366, 548 S.E.2d at 
 586.  The Court went on to note that showing the connection to the insurance 
 company was qualitatively different from showing the expert worked for the defense 
 and was much more indicative of possible bias in favor of the defendant.  Id.
In the present case, Crosby Construction presented 
 Robert Lanier as an expert in general contracting.   Although the News expert 
 testified that most of the repairs to the home could be accomplished for $84,580, 
 Lanier testified he could perform the same repairs for $41,901.15.   Outside 
 the presence of the jury, the News stated they wanted to question Lanier regarding 
 his estimates for insurance companies which comprised between seventy-five and 
 eighty percent of his work.   Over Crosby Constructions objections, the circuit 
 court allowed the News to question Lanier about his insurance work.  Lanier 
 testified to the jury that most of his work came from making repairs for insurance 
 companies on claims on homeowners insurance policies.  He also stated he was 
 willing to change his estimates upon the request of insurance companies.   The 
 parties did not know whether Lanier had ever performed work for Zurich, Crosby 
 Constructions liability insurer, and no testimony was elicited identifying 
 specific insurance companies Lanier worked with. 
The present case is distinquishable from 
 Yoho.  Whereas the expert in Yoho actually performed work for 
 the insurance carrier representing the defendant, nothing in this case indicates 
 Lanier ever worked for Zurich.  Lanier worked with insurance companies under 
 homeowners policies, not liability policies.  Despite the fact that up to eighty 
 percent of Laniers work came from insurance companies, the substantial connection 
 to the specific carrier that existed in Yoho is simply not present here.  

Even though there is no substantial connection 
 in the present case, we believe the admission of evidence regarding Laniers 
 connection to insurance carriers was permissible.  A witness may be cross-examined 
 on any matter relevant to any issue in the case, including credibility.  Rule 
 611(b), SCRE.  Considerable latitude is allowed in cross-examination to test 
 a witnesss bias, prejudice, or credibility.  Yoho, 345 S.C. at 364-65, 
 548 S.E.2d at 585.  The trial courts ruling regarding scope of cross-examination 
 to show bias or test credibility will not be overturned on appeal absent an 
 abuse of discretion.  Id.   
Lanier testified that he worked for insurance companies 
 on homeowners claims.  He did not implicate liability insurance in violation 
 of Rule 411, SCRE.  Further, the testimony elicited at trial did not indicate 
 whether Crosby Construction was insured.  However, Laniers dependence upon 
 insurance companies in general for up to eighty percent of his income was evidence 
 that impacted Laniers credibility or could show potential bias.  As the evidence 
 did not impermissibly inform the jury regarding Crosby Constructions insurance 
 status and it was used to test Laniers bias, we find no abuse of discretion 
 in the present case. [2]   
CONCLUSION
The circuit court erred in failing to grant Crosby 
 Constructions motion for a directed verdict on the claim for stigma damages 
 where there was no evidence to support the amount of stigma damages and allowing 
 the jury to consider stigma damages amounted to double recovery.  The circuit 
 court also erred in failing to grant Crosby Constructions motion for a new 
 trial absolute because there was no evidence to support the amount of the jurys 
 award.  Finally, we find the circuit court did not abuse its discretion in allowing 
 evidence that Crosby Constructions expert was connected to insurance companies.  Accordingly, the trial court is AFFIRMED 
 IN PART, REVERSED IN PART, and REMANDED for a new trial absolute.  
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
GOOLSBY and ANDERSON, JJ., and CURETON, AJ., 
 concur.

 
 
 [1] In further support of its claim that the circuit court erred in failing 
 to grant a directed verdict, Crosby Construction argues there was no evidence 
 to support a claim for stigma damages because the problems with the property 
 were not permanent and could be repaired.   Testimony from the experts indicated 
 the problems with the home could be repaired, thus the damages were not necessarily 
 permanent in nature.  However, Crosby Construction did not make this argument 
 before the circuit court in support of its motion for directed verdict.  Accordingly, 
 this argument is not preserved for appellate review.  Staubes v. City of 
 Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000).

 
 
 [2] Because we reverse and remand on the issues of the trial judges 
 failure to grant Crosby Constructions motions for directed verdict and a 
 new trial absolute, we need not address Crosby Constructions remaining issues 
 on appeal.  However, we have chosen to address the issue regarding Laniers 
 connection to insurance companies because it is an issue that is likely to 
 repeat itself upon retrial of this case.