533 S.E.2d 906

**Lea WARING, Respondent,**

v.

**Darrell JOHNSON, III, Appellant.**

**No. 3193.**

Court of Appeals of South Carolina.

Heard May 10, 2000.
Decided June 12, 2000.
Rehearing Denied Sept. 2, 2000.

250

Matthew H. Henrikson and Wendy J. Keefer, both of Barnwell, Whaley, Patterson & Helms, of Charleston, for Appellant.

Paul H. Infinger, of Dukes, Williams, Infinger & Ruff, of Beaufort, for Respondent.

ANDERSON, Judge:

In this tort action, Darrell Johnson, III, appeals from the trial court's grant of a new trial *nisi additur* to Lea Waring. We affirm.

### *FACTS/PROCEDURAL BACKGROUND*

On August 19, 1992, at about 1:30 p.m., Waring and Johnson were involved in an automobile accident on Highway 17, at that time a two lane highway, near an area called Pocataligo. Waring, who was sixty-four years old at the time, was a passenger in a motor home which Johnson struck from behind in his truck.

Waring testified she and her then-husband (the couple is now divorced) were in the second day of a one month trip when they were forced to slow down because a car ahead of them was driving with a flat tire. They were waiting for oncoming traffic to clear so they could pass when they were suddenly, and without warning, struck from behind. The front left side of the truck crashed into the right rear portion of the motor home with such an impact that a stove or refrigerator which was installed inside the motor home flew over the top of the truck. The highway patrolman who responded to the scene stated that when he arrived, debris from the motor home was scattered two hundred feet up and down the highway.

The highway on which Waring and Johnson were traveling was straight and had no visual obstructions. According to Johnson, it was raining hard at the time of the accident and, although he had slowed to 45 miles per hour, the rain on the road made it impossible for him to avoid striking the motor

home. Waring, however, did not recall it raining very hard. Waring declared she had no difficulty seeing the slowed vehicles ahead and her husband had no difficulty in slowing down while waiting for an opportunity to pass.

The next morning, Waring felt stiff and took Ibuprofen. She and her husband canceled their plans to drive to Maine. Instead, they returned to their home in Florida on Saturday, four days after the accident. By that date, Waring was in agony, in pain throughout her body. She could not bear to ride in the vehicle without Ibuprofen. Waring found and took some Darvocet she had in a first aid kit.

On Monday morning, Waring called to make an appointment with her doctor, Dr. Robert Diaz, an orthopedic surgeon. She could not get an appointment until August 28, 1992. In the interim period, Waring suffered from neck and back pain so severe she could not bend over and could only "lay around and groan." Dr. Diaz recalled Waring suffered from muscle spasms in her neck and lumbar spine. He opined the spasms were caused by the accident. Dr. Diaz prescribed muscle relaxers and anti-inflammatory medicine and sent Waring to physical therapy.

When Dr. Diaz saw Waring less than two weeks later, on September 9, he noticed mild muscle spasm in her upper shoulder. Her lumbar spine spasm had become moderate to marked with a loss in her range of motion. At her next visit on September 18, Waring had improved with physical therapy but was still suffering pain in her shoulder. She experienced even more improvement by her next visit on September 30, although she still had spasms in her lumbar spine and upper shoulders. By early November, Waring had improved to the point that she was able to swim and fish. Yet, she still experienced tightness in her neck while sitting and reading. At a visit approximately three weeks later, she reported she was no longer improving with physical therapy and medicine. Additionally, she complained of neck pain and occasional arm pain while reaching. An examination revealed her range of motion in her neck and lumbar spine was restricted. As of her December 4, 1992 visit, Waring's main symptoms involved her neck, but she had less spasms and her range of motion

was good. Dr. Diaz advised Waring to increase her activities and perform exercises at home.

On January 6, 1993, Dr. Diaz examined Waring when she experienced a recurrence of lower back discomfort brought on by lifting a holiday turkey on December 22, 1992. She noticed the pain immediately and it remained until her visit to the doctor. Dr. Diaz checked Waring's lumbar spine and reported the highest spasm and pain ratings to date. Her range of motion was minimal. Dr. Diaz ordered an MRI and a bone scan. Waring's bone scan was normal, but her MRI showed extensive degenerative disc disease and spinal stenosis, which is a narrowing of the spinal canal. According to Dr. Diaz, the cause of Waring's back complaints on that date "was a continuing problem from her motor vehicle accident that had probably aggravated an already present spinal stenosis." In addition, she suffered neck complaints which the doctor attributed to cervical strain caused by the accident. Dr. Diaz stated he did not believe Waring was malingering or faking her symptoms.

In January, Waring began experiencing more severe back problems, which affected her control over her legs, bowel, and bladder. Because of her increasing difficulties and Dr. Diaz's reluctance to engage in any different course of treatment, Waring decided to see a neurosurgeon. She spoke to one of her neighbors, who recommended she seek the assistance of Dr. Glenn Kindt, a neurosurgeon in Denver, Colorado, who had performed back surgery on Waring's neighbor. Dr. Kindt saw Waring four times: (1) on September 14, 1993, for her initial evaluation in which he reviewed her MRIs and recommended surgery; (2) on September 20, 1993, when he performed a laminectomy[1] for stenosis and discectomy[2] for a herniated disc on Waring; (3) at the follow-up visit on September 28, 1993; and (4) approximately two years later on August 21, 1995, when Waring continued to experience burning sensa-

---

1. A laminectomy is the "removal of part of the back part of the spine bone to give more room to the neural elements, the nerves and [the] spinal cord."

2. Specifically, Dr. Kindt performed a bilateral excision of a herniated disc.

tions down her right leg after standing for longer than two hours.

When asked the role Waring's accident played in her symptoms, Dr. Kindt was hesitant to give an opinion of the role of any accident in Waring's condition. However, he stated that if she had been in an accident and if her symptoms began at that time, he was quite certain the symptoms were related to the accident. Dr. Kindt explained that, while an accident could not have created the stenosis which required surgery, it could have aggravated it. When presented with hypothetical questions matching Waring's history, Dr. Kindt opined her stenosis was in fact aggravated by the accident and that her herniated disc could have been caused by the accident.

Sometime in 1994, after her surgery and return to Florida, Waring began experiencing muscle spasms which would sometimes last several days. In May of 1994, she visited the Carolina Spine Institute in Charleston, South Carolina, where she saw Dr. Steven Poletti for an independent medical evaluation of lower back pain.

In 1995, Waring moved to Seattle, Washington. On April 16, 1996, she began seeing Dr. Andrew Friedman, a doctor of physical medicine and rehabilitation. At that point, she could not engage in her prior hobbies such as fishing or swimming. Her main complaint was back pain. Dr. Friedman prescribed Darvocet and arranged for Waring to receive physical therapy to reduce her muscular contractures. In August of 1996, Waring returned to Dr. Friedman for a check-up because she had "new symptoms radiating down her leg." Her foot was becoming increasingly numb. One month later, Dr. Friedman gave her a steroid injection to reduce inflammation. He opined Waring's 1992 accident most probably caused or contributed to her back and leg pain. Dr. Friedman explained that Waring had a pre-existing degenerative arthritic condition which the accident probably accelerated or aggravated. He stated Waring's pain would be permanent and would require a variety of treatments over the remainder of her life, including medication, physical therapy, epidural steroid injections and, possibly, surgery.

In October of 1997, Waring returned to the Carolina Spine Institute where she was treated by several doctors. Her

primary complaints were back pain, leg pain, numbness on the top of her foot, pain in her right foot, and an inability to move her toes. Waring received epidural steroid injections and selective nerve root injections to ease the pain. Dr. John Johnson, who treated her at the institute, testified Waring's 1992 accident was the initial cause of her back pain and, although she had pre-existing conditions, the accident clearly aggravated them, causing her cascading pain requiring surgery and years of treatment. Dr. Johnson asserted that, based on the treatment Waring received in the past, he would be "very surprised if there's anything that can be done for her" to make her better. He did, however, refer Waring to a chronic pain specialist.

In addition to the pain and surgery she endured, Waring's lifestyle was changed by the accident. Prior to this wreck, Waring enjoyed traveling long distances, camping, competitive salt water sport fishing, golfing, boating, swimming, and gardening. Since the accident, Waring has been unable to return to most of these activities.

Waring filed this action against Johnson and his father in 1995 seeking recovery for personal injuries suffered as a result of the accident. Johnson's father was subsequently dismissed as a party. At the conclusion of the trial, the court instructed the jury with regard to the law of aggravation of a pre-existing injury and the law of damages, including past and future medical expenses, as well as physical and mental pain and suffering. The jury returned a verdict of $23,237.28, the exact amount of Waring's medical bills. Waring moved for a new trial *nisi additur* or, in the alternative, a new trial absolute. The court denied the motion for a new trial absolute, but granted the motion for a new trial *nisi additur*, finding:

> [T]he verdict is not so grossly inadequate so as to shock the conscience of the Court nor to indicate that the jury was motivated by passion, caprice or prejudice. Rather the verdict is merely inadequate because it fails to compensate [Waring] for all of her damages. Since the verdict was for the exact amount of the medical bills it is clear that the jury believed the medical treatment to be reasonable and necessary. The jury failed to make any award for other damages such as pain and suffering.

The court determined: "[T]his is a case appropriate for a new trial *nisi additur* in the amount of $40,000 in addition to the verdict rendered by the jury." The court ruled that if Johnson did not accept the *additur* within fifteen days, Waring would receive a new trial absolute.

## ISSUE

Did the trial court err in granting Waring's motion for new trial *nisi additur?*

## LAW/ANALYSIS

Johnson argues the trial court abused its discretion in granting Waring a new trial *nisi additur*. Specifically, he maintains the court (1) failed to consider that the jury's verdict might have represented an award of pain and suffering and a portion of Waring's claimed medical expenses; (2) failed to consider that the jury might have concluded Waring's medical expenses were proximately caused by the accident, but her pain and suffering arose solely from her pre-existing condition; and (3) granted an excessive *additur*, if in fact one was warranted.

### New Trial Nisi Additur

When the jury's verdict is inadequate or excessive, the trial judge has the discretionary power to grant a new trial *nisi*. *Bailey v. Peacock*, 318 S.C. 13, 455 S.E.2d 690 (1995). *See also McCourt by and through McCourt v. Abernathy*, 318 S.C. 301, 457 S.E.2d 603 (1995) (trial judge alone has power to grant new trial *nisi* when he finds amount of verdict to be merely inadequate or excessive). Compelling reasons, however, must be given to justify invading the jury's province in this manner. *Bailey, supra*. The grant or denial of a motion for a new trial *nisi* rests within the discretion of the trial judge and his decision will not be disturbed on appeal unless his findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law. *See Krepps by Krepps v. Ausen*, 324 S.C. 597, 479 S.E.2d 290 (Ct.App.1996). *See also Vinson v. Hartley*, 324 S.C. 389, 477 S.E.2d 715 (Ct.App. 1996) (grant of motion for new trial *nisi* is within trial judge's discretion and will not be reversed on appeal absent abuse of discretion). Yet, such discretion is not absolute. *Pelican*

*Bldg. Ctrs. of Horry–Georgetown, Inc. v. Dutton,* 311 S.C. 56, 427 S.E.2d 673 (1993). This Court has the duty to review the record and determine whether there has been an abuse of discretion amounting to an error of law. *Vinson, supra.*

■ A new trial *nisi* is one in which a new trial will be granted unless the party opposing it complies with a condition set by the court. *Elliott v. Black River Elec. Coop.,* 233 S.C. 233, 104 S.E.2d 357 (1958). When a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial judge must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice or prejudice. *Allstate Ins. Co. v. Durham,* 314 S.C. 529, 431 S.E.2d 557 (1993). If the amount of the verdict is so grossly inadequate or excessive that it shocks the conscience of the court and clearly indicates the amount was the result of passion, caprice, prejudice, partiality, corruption or some other improper motives, the trial judge is required to grant a new trial absolute. *See Cock–N–Bull Steak House, Inc. v. Generali Ins. Co.,* 321 S.C. 1, 466 S.E.2d 727 (1996); *Krepps, supra.*

■ While the trial court may not impose its will on a party by substituting its judgment for that of the jury, the court may give the party an option in the way of *additur* or, in the alternative, a new trial. *Vinson, supra.* The consideration of a motion for a new trial *nisi additur* requires the court to consider the adequacy of the verdict in light of the evidence presented. *Krepps, supra.* A new trial *nisi additur* may be ordered when the verdict is merely insufficient based on the evidence. *Pelican, supra.* The trial judge who heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this Court. *Vinson, supra.* Accordingly, great deference is given to the trial judge. *Id.*

■ The import of a new trial *nisi additur* is a suggestion on the part of the judge of a settlement figure. *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984); *Estes v. Grav,* 319 S.C. 551, 462 S.E.2d 561 (Ct.App.1995). If the party opposing the motion for a new trial *nisi additur* later agrees to pay the amount suggested by the trial court, the party cannot thereafter complain. *Graham, supra.* The prevailing

party having asked for the relief must likewise be content with the determination. *Id.*

■ The practice of using *additur* is said to be in the interest of sound administration of justice, since it avoids the necessity of a new trial with its accompanying expense and delay. 58 Am.Jur.2d *New Trial* § 584 (1989). The granting of new trials upon the ground of inadequacy of damages occurs less frequently than the granting of new trials upon the ground of excessive damages, probably because detection of inadequacy of damages is not as easy as is detection of excessiveness. 58 Am.Jur.2d, *New Trial* § 403 (1989). Although the motion for a new trial *nisi additur* has not been frequently used, it is true that the trial judge has the authority to grant a new trial to the plaintiff unless the defendant agrees to the payment of an additional amount. *Graham, supra.*

■ Absent an abuse of discretion, the trial court's grant of a motion for new trial *nisi additur* will not be reversed on appeal. *See e.g., Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984) (court did not abuse its discretion in granting patient, who had been awarded $10,000 in actual damages and $10,000 in punitive damages against ophthalmologist for injuries she sustained in a fall in ophthalmologist's office, a new trial *nisi* on damages unless ophthalmologist agreed to an *additur* of $67,500 in actual damages, where judge stated appropriate reasons in his order and it could not be argued that patient was adequately compensated by jury verdict); *Estes v. Grav,* 319 S.C. 551, 462 S.E.2d 561 (Ct.App.1995) (affirming trial court's grant of plaintiff's motion for new trial *nisi additur* even where plaintiff claimed on appeal that $500 in additional damages was inadequate); *Patterson v. Reid,* 318 S.C. 183, 456 S.E.2d 436 (Ct.App.1995) (trial court did not abuse its discretion in granting motion for new trial *nisi additur* and increasing damages award to motorist injured in automobile accident from $500.54 to $7,639.40 where treating physician testified that motorist had fibrosis which was most probably result of accident, that she did not believe motorist had psychosomatic problems, and that, due to accident, motorist's daily pain increased to eight on scale of ten from five, even though conflicting evidence was presented regarding

effects of, and daily pain level of five prior to accident was caused by, earlier accident in which motorist was involved); *Kalchthaler v. Workman,* 316 S.C. 499, 503, 450 S.E.2d 621, 623 (Ct.App.1994) (trial court did not abuse its discretion in granting new trial *nisi additur* in the amount of $2,553.76 where the plaintiff's motion specified "an amount 'up to $15,-000' " and in denying motion for new trial absolute where verdict was not so shockingly disproportionate to injuries sustained as to indicate some influence outside evidence motivated jury's decision); *Stroud v. Stroud,* 299 S.C. 394, 385 S.E.2d 205 (Ct.App.1989) (granting new trial *nisi additur* of $4000, for a total of $8765.17, in personal injury action arising when plaintiff was injured while visiting his brother's repair shop was not abuse of discretion, although plaintiff did not receive amount he had requested); *Thomas v. Seay,* 295 S.C. 455, 369 S.E.2d 660 (Ct.App.1988) (evidence in record, that plaintiff suffered 10 to 15% permanent partial impairment to her cervical spine and incurred medical bills totaling almost $2,000 as result of automobile accident, supported grant of new trial *nisi additur* raising jury verdict of $371 in actual damages to $7,500); *Jones v. Ingles Supermarkets, Inc.,* 293 S.C. 490, 361 S.E.2d 775 (Ct.App.1987), *overruled on other grounds by O'Neal v. Bowles,* 314 S.C. 525, 431 S.E.2d 555 (1993) (jury award of $150 in malicious prosecution action to compensate plaintiff for attorney fees incurred in defending charge of issuing check on closed account was grossly inadequate to compensate plaintiff for mental pain and suffering, fright, nervousness, indignity, humiliation, embarrassment and insults she was subjected to when arrested in presence of her two children and forced to travel to county jail where she was subjected to lengthy booking process, including being photographed and then imprisoned in cell for four hours or more, and thus court did not abuse its discretion in granting new trial nisi additur in amount of $7500); *Chiappetta v. Orr,* 293 S.C. 250, 359 S.E.2d 530 (Ct.App.1987) (trial court's grant of vendors' motion for new trial *nisi* unless purchaser agreed to *additur* of $12,500 in damages was not abuse of discretion following jury's award of $2,500 damages to vendors against purchaser for breach of contract for sale of home, based on purchaser's stopping payment on earnest money check; it was

evident from record vendors' damages were in range of damages awarded by jury verdict and trial judge's *additur*).

■ In the instant case, the trial court did not err in granting a new trial *nisi additur*. The jury failed to consider Waring's pain and suffering in reaching its verdict. Waring visited numerous doctors for years after the accident, seeking relief from varying degrees of pain and discomfort. She underwent surgery for a condition which numerous doctors testified was aggravated by the wreck. Waring took advantage of every recommendation of her physicians and, unfortunately, will most likely suffer pain for the remainder of her life. In addition to the pain she has and will continue to suffer, Waring found herself unable to continue her previous active lifestyle. Indubitably, Waring is entitled to an award for pain and suffering.

■ As to Johnson's claim the jury's verdict may have been intended to represent a portion of Waring's medical expenses, plus pain and suffering, we find this argument patently untenable. The jury's award of exactly the amount of Waring's medical expenses, to the penny, is an attempt to reimburse her for those very expenses.

■ Further, we reject Johnson's argument that the jury may have concluded Waring's medical expenses were caused by the accident, but that her pain and suffering arose solely from her pre-existing condition. Each doctor who testified expressed his opinion that Waring's various pains were associated, at least in part, with the accident. Even if the greatest portion of Waring's pain was caused by her pre-existing conditions, there is no question that the accident aggravated or accelerated those conditions, resulting in pain where there previously had been none. *See Raino v. Goodyear Tire & Rubber Co.*, 309 S.C. 255, 259, 422 S.E.2d 98, 100 (1992) ("The defendant takes the plaintiff as he is found and the plaintiff is entitled to recover damages resulting from the aggravation of a pre-existing condition.").

■ Finally, Johnson claims that even if the trial court properly granted *additur,* the amount awarded for pain and suffering was excessive. We disagree. Given the pain War-

ing has and will suffer, and the lifestyle she has lost, the court's *additur* of $40,000 was not excessive.

The Circuit judge articulated compelling reasons in his order justifying the grant of the *nisi additur*. The order encapsulates a review of the evidentiary record and the applicable law.

## CONCLUSION

We hold the trial court did not abuse its discretion by granting a new trial *nisi additur*. Accordingly, the order of the Circuit Court granting a new trial *nisi additur* is

**AFFIRMED.**

HEARN, C.J., and HUFF, J., concur.