741 S.E.2d 565

**J. Mars SAPP, Respondent,**

v.

**Will D. WHEELER, P.I. Leasing & Management, Inc., Winston Kenneth Altman, II, and JDBD, LLC, Defendants,**

**of whom, Will D. Wheeler is the Appellant.**

Appellate Case No.2011–189347.

No. 5089.

Court of Appeals of South Carolina.

Heard Nov. 13, 2012.

Decided Feb. 20, 2013.

504

James Mixon Griffin, of Lewis Babcock & Griffin, LLP, of Columbia, for Appellant.

Thomas Whatley Bunch, II, of Robinson McFadden & Moore, PC, of Columbia, for Respondent.

SHORT, J.

In this action brought by J. Mars Sapp (Sapp) to collect rent obligations, Will Wheeler (Wheeler) appeals from a $252,798 verdict against him, arguing the trial court erred in denying his: (1) motion for a directed verdict on the claim for future damages; (2) motion for a directed verdict based on the statute of limitations; (3) request for a jury charge on the three-year statute of limitations for a breach of contract action; (4) motion for a new trial; and (5) motion for a new trial under the thirteenth juror doctrine. We affirm.

## FACTS

On September 27, 1994, P.I. Leasing entered into a lease agreement with Sapp to rent a building in Surfside Beach, South Carolina.[1] The lease was to expire on October 1, 2014. Wheeler, as president of P.I. Leasing, personally guaranteed performance by P.I. Leasing of the lease obligations, including payment and rent. From October 1994 to June 1998, P.I. Leasing operated a video gambling establishment on the leased premises; however, in June 1998, Wheeler sold the business to Resort Properties South, Inc. (Resort Properties) and assigned the lease to it. Under the assignment, P.I. Leasing was liable for the rent obligations of Resort Proper-

---

1. Wheeler was a majority owner of P.I. Leasing and Jarvis Faircloth was a minority owner. Ken Altman provided accounting services to P.I. Leasing and Wheeler; served as the registered agent for P.I. Leasing; and collected rent from the leased property's occupants.

ties, and Wheeler again personally guaranteed performance of the lease terms. Sapp continued to receive rent checks from P.I. Leasing through February 2001. Thereafter, several different entities continued to send monthly rental checks to Sapp, including: Save the Ocean Project, Inc.; Coastal Rescue Mission; Ken Altman, II, LLC; and JDBD, LLC and Kenneth Altman, II. Sapp testified every rent check from 1994 to September 2007 was signed by Wheeler, Altman, or Faircloth. Wheeler never provided Sapp with written notice he was revoking his guaranty. By September 2007, P.I. Leasing had defaulted in its payments and was evicted in June 2008.[2]

Sapp filed a complaint on September 30, 2008, seeking accelerated rent and damages, discounted by rent from the current tenant, in the amount of $556,099, plus attorney's fees and costs. In his answer, Wheeler asserted the lease agreement was void for a mutual mistake because Sapp leased the premises to P.I. Leasing for the purposes of operating a video gambling establishment; however, subsequent to the execution of the lease, South Carolina outlawed video gambling and the purpose for which the lease was entered could not be performed. Therefore, Wheeler claimed P.I. Leasing was excused from performing its duties under the terms of the lease due to legal impossibility. Wheeler also pleaded the following as defenses: the doctrine of estoppel, failure to mitigate, failure to state a claim for relief, statute of limitations, the doctrine of laches, the doctrine of waiver, and the guaranty was void for lack of consideration. Further, Wheeler demanded a jury trial. Sapp filed an amended complaint on October 6, 2009, alleging a cause of action against Wheeler for breach of contract.[3]

A trial was held June 1–3, 2010. At the close of his case, Wheeler moved for a directed verdict on Sapp's claim for future damages and asserted Sapp's claim was barred by the three-year statute of limitations. At the close of testimony and after counsels' closing arguments, the court denied both of

---

2. P.I. Leasing was dissolved with the Secretary of State's office on July 30, 2007.

3. Sapp also added two defendants: Kenneth Altman, the registered agent for P.I. Leasing, and JBDB, LLC, Altman's company; however, only Wheeler is appealing.

Wheeler's motions for directed verdict. The jury returned a $252,789 verdict for Sapp against Wheeler. The court also awarded Sapp $48,929 in legal fees against Wheeler.

On June 14, 2010, Wheeler filed a motion for new trial absolute, or in the alternative, a new trial *nisi remittitur*. Wheeler argued the verdict against him was facially inconsistent with the $7,300 verdict against P.I. Leasing. Therefore, he asserted the court had to order a new trial absolute or in the alternative a new trial *nisi remittitur* to limit Wheeler's liability to the same liability as against P.I. Leasing. Wheeler also claimed the verdict was a product of confusion, passion, prejudice, partiality, corruption, or some other improper motive, and not supported by the evidence. Therefore, he requested the court grant a new trial under the thirteenth juror doctrine. Further, Wheeler alternatively sought an order remitting the verdict to $7,300. Sapp objected to Wheeler's motion, asserting Wheeler waived the ability to challenge the verdict by failing to make the objection prior to dismissal of the jury. The court denied Wheeler's motion, finding Wheeler failed to timely object. This appeal followed.

## STANDARD OF REVIEW

An action for breach of contract seeking money damages is an action at law. *Silver v. Aabstract Pools & Spas, Inc.*, 376 S.C. 585, 590, 658 S.E.2d 539, 541–42 (Ct.App. 2008). "In an action at law, on appeal of a case tried by a jury, the jurisdiction of this [c]ourt extends merely to the correction of errors of law, and a factual finding of the jury will not be disturbed unless a review of the record discloses that there is no evidence which reasonably supports the jury's findings." *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 85, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

### I. Directed Verdict Motions

When reviewing the denial of a motion for a directed verdict, this court views the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Pond Place Partners, Inc. v. Poole*, 351 S.C. 1, 15, 567 S.E.2d 881, 888 (Ct.App.2002). A directed verdict motion is properly granted if the evidence as a whole is susceptible of only one

reasonable inference. *Id.* In ruling on a directed verdict motion, the trial court is concerned only with the existence or non-existence of evidence. *Id.* This court will only reverse the trial court when no evidence supports the ruling below. *Id.*

## A. Future Damages

Wheeler argues the court erred in denying his motion for a directed verdict on the claim for future damages because no evidence was presented that the reasonable rental value at the time of termination was less than the reserved rent under the lease. We disagree.

At trial, Wheeler moved for a directed verdict, requesting the court strike Sapp's claim for future damages. The court held the language in the lease between P.I. Leasing and Sapp was the binding method for determining future loss of rental income following the termination of the lease. The lease Wheeler signed as a guaranty provides: "If such rentals received from such re[-]letting during any month be less than those to be paid by [sic] during that month by Tenant hereunder, Tenant shall pay any such deficiency to Owner. Such deficiency shall be calculated and paid monthly." It further provides Sapp can terminate the lease for any breach and recover from the tenant

> all damages [Sapp] may incur by reason of such breach, including the cost of recovering the [l]eased premises, reasonable attorney's fees, and, including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to rent reserved in this [l]ease for the remainder of the stated term over the then reasonable rental value of the [l]eased [p]remises for the remainder of the stated term, all of which amounts shall be immediately due and payable from [t]enant to [o]wner.

On appeal, Wheeler argues Sapp failed to present any evidence he was entitled to future damages. Wheeler asserts that to be entitled to an award of future damages, Sapp was required to present evidence that on August 13, 2008, the reserved rent per month under the lease of $6,618 was greater than the reasonable rental value of the leased premises on the same date.

■ At the time the lease went into default, the monthly rent was $6,618. Once Sapp regained control of the property in Spring 2008, he was able to re-lease the property to several different tenants, and he presented evidence he netted $20,623.28 in income from the property from May 2008 to May 2010. Sapp asserts the rents he received are the reasonable rental value of the leased premises. He maintained his total damages are $494,053. Therefore, Sapp argues the reasonable rental value at the time of the termination of the lease was a question of fact for the jury because the reasonable rental value of the leased premises was subject to different interpretations. Further, the jury returned a verdict against Wheeler for $252,798, or approximately 51% of the total damages Sapp sought; thus, the jury's verdict was within the range of damages presented. Because the evidence as a whole was susceptible of more than one reasonable inference as to the reasonable rental value of the property, we find the court properly denied Wheeler's motion for a directed verdict.

## B. Statute of Limitations

Wheeler argues the court erred in refusing to grant his motion for a directed verdict because Sapp failed to bring an action to enforce the guarantee against Wheeler within three years after P.I. Leasing ceased making rent payments. We disagree.

A lease agreement is a contract and an action for breach of contract must be brought within three years from the date the action accrues. S.C.Code Ann. § 15–3–530(1) (2005). Therefore, at trial, Wheeler moved for a directed verdict, asserting Sapp's claim was barred by the three-year statute of limitations. Wheeler claimed Sapp was required to bring his action within three years of the date P.I. Leasing stopped making its payments, which was in 2001. The court responded:

[T]he statute of limitations doesn't begin to run until ... Sapp ... knew or in the exercise of ordinary and reasonable diligence should have known that he had a right of cause of action against another entity. In this case[,] he was being paid and the checks were coming from everybody and everywhere and every entity that was out there. ... He did not have any reason to believe that he had a cause of action against [Wheeler] until the payments quit coming from

anybody, and it's my understanding that suit was filed thereafter within the statute of limitations. So, I must respectfully deny your motion for a directed verdict on the statute of limitations issue.

On appeal, Wheeler asserts he only guaranteed the performance of two entities, P.I. Leasing and Resort Properties, and neither of these entities made payments to Sapp after February 2001. Further, Wheeler argues Sapp did not provide any evidence of a written communication between Sapp and Wheeler in which either party consented or communicated that third parties, other than P.I. Leasing, Resort Properties, or Wheeler, would make payments under the lease on behalf of the identified tenants and guarantors under the lease. Therefore, Wheeler maintains Sapp's cause of action to enforce the guaranty accrued in 2001 and was barred by the statute of limitations.

█ Sapp received the last lease payment in January 2008, and he filed the suit on September 30, 2008; therefore, Sapp brought the action to enforce the guaranty against Wheeler within a year after the default on the lease payments. Sapp entered into the lease with P.I. Leasing in 1994, and the lease was assigned to Resort Properties in 1998. No other assignments or substitutions of tenants occurred, and Sapp received rent payments for the amounts required by the lease from 1994 until September 2007. Further, Sapp testified Wheeler, Altman, or Faircloth signed every check he received, and they were all involved at the inception of the lease in 1994. We find no error in the trial court's determination that Sapp had no reason to believe he had a cause of action against Wheeler until the rental payments ceased, and therefore, Sapp filed his action within the statute of limitations. Thus, the court properly denied Wheeler's motion for a directed verdict on the statute of limitations issue.

## II. Jury Charge

Wheeler argues the court erred in denying his request for a jury charge on the three-year statute of limitations for a breach of contract action. We disagree.

█ The trial court need only charge the current and correct law of South Carolina. *Magnolia N. Prop. Owners'*

*Ass'n, Inc. v. Heritage Cmties., Inc.,* 397 S.C. 348, 362, 725 S.E.2d 112, 120 (Ct.App.2012). "In reviewing an alleged error in jury instructions, we are mindful that an appellate court will not reverse the [trial] court's decision absent an abuse of discretion." *Hennes v. Shaw,* 397 S.C. 391, 402, 725 S.E.2d 501, 507 (Ct.App.2012). "An abuse of discretion occurs when the trial court's ruling is based on an error of law or is not supported by the evidence." *Cole v. Raut,* 378 S.C. 398, 404, 663 S.E.2d 30, 33 (2008). In our review, this court must consider the trial court's jury charge as a whole in light of the evidence and issues presented at trial. *Hennes,* 397 S.C. at 402, 725 S.E.2d at 507. "A trial court's refusal to give a properly requested charge is reversible error only when the requesting party can demonstrate prejudice from the refusal." *Pittman v. Stevens,* 364 S.C. 337, 340, 613 S.E.2d 378, 380 (2005).

At trial, Sapp asked the court: "[A]re you going to charge statute of limitations as a defense in the case?" The court responded: "No." Sapp replied: "Okay." The court then stated:

I don't think it's a factual issue. I don't think in this particular case that Mr. Sapp had any reason to expect, as I've indicated earlier, that he had a cause of action against Mr. Wheeler until the payments stopped coming in.

Wheeler did not object to the court's ruling that it was not going to charge the statute of limitations, and he did not object after the jury was charged. Sapp argued in his response to Wheeler's motion for a new trial that Wheeler waived his right to object to the jury charge by failing to object before the jury was discharged. On appeal, Wheeler argues the trial court erred by refusing to charge the jury on the applicable three-year statute of limitations because the evidence conflicted as to the date the cause of action accrued.

We find Wheeler has not demonstrated he was prejudiced by the court's decision not to charge the statute of limitations because Sapp presented evidence he was receiving checks until September 2007 for the correct amount of rent that Wheeler, Altman, or Faircloth signed, and Sapp filed this action within one year of the default. Further, Wheeler never gave Sapp written notice he was terminating the lease, and

Sapp never consented to assignments of the lease. The court found any leases for which Sapp did not give his consent were legally void and did not impact Wheeler's guaranty. Therefore, the trial court did not err in denying Wheeler's request for a jury charge on the three-year statute of limitations for a breach of contract action.

### III. Motion for New Trial

Wheeler argues the court erred in denying his motion for a new trial because the verdict was irreconcilably inconsistent and excessive. We disagree.

"In South Carolina, an appellate court must uphold a jury verdict if it is possible to reconcile its various features." *Camden v. Hilton*, 360 S.C. 164, 174, 600 S.E.2d 88, 93 (Ct.App.2004). "Furthermore, 'a jury verdict should be upheld when it is possible to do so and carry into effect the jury's clear intention.' " *Id.* (quoting *Johnson v. Parker*, 279 S.C. 132, 135, 303 S.E.2d 95, 97 (1983)). "When the jury's verdict is inadequate or excessive, the trial [court] has the discretionary power to grant a new trial *nisi.*" *Waring v. Johnson*, 341 S.C. 248, 256, 533 S.E.2d 906, 910 (Ct.App.2000). "Compelling reasons, however, must be given to justify invading the jury's province in this manner." *Id.* "The grant or denial of a motion for a new trial *nisi* rests within the discretion of the trial [court] and [its] decision will not be disturbed on appeal unless [its] findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." *Id.* "This [c]ourt has the duty to review the record and determine whether there has been an abuse of discretion amounting to an error of law." *Id.* at 257, 533 S.E.2d at 911.

In his motion for new trial absolute, or in the alternative, a new trial *nisi remittitur*, Wheeler argued the verdict against him was facially inconsistent with the $7,300 verdict against P.I. Leasing. Therefore, he asserted the court had to order a new trial absolute or in the alternative a new trial *nisi remittitur* to limit Wheeler's liability to the same liability as previously decided against P.I. Leasing. The court denied Wheeler's motion, finding Wheeler did not object to the jury's verdict until the jury was discharged. Thus, the court determined he failed to timely object, and the issue was waived.

2001; and was dissolved as a company in 2007. Wheeler also signed as a guaranty under the assignment of the lease to Resort Properties and was still the guaranty for the lease until the lease was breached in 2007. Therefore, the jury could reasonably award Sapp fewer damages against P.I. Leasing than for Wheeler. Additionally, the jury's finding that P.I. Leasing breached its lease agreement and Wheeler breached his guaranty agreement was not ambiguous or inconsistent because the jury awarded Sapp actual damages against both P.I. Leasing and Wheeler, and did not award punitive damages against either. Therefore, we find the evidence supports the trial court's denial of Wheeler's motion for a new trial because the verdict was not irreconcilably inconsistent or excessive.

### IV. Thirteenth Juror Doctrine

Wheeler argues the court erred in denying his motion for a new trial under the thirteenth juror doctrine because the verdict was inconsistent, reflected jury confusion, and was excessive.

 "Under the 'thirteenth juror' doctrine, a trial [court] may grant a new trial absolute when [it] finds the evidence does not justify the verdict." *Vinson v. Hartley*, 324 S.C. 389, 402, 477 S.E.2d 715, 722 (Ct.App.1996). The trial court has the authority to grant a new trial upon its finding that justice has not prevailed or if the verdict is inconsistent and reflects the jury's confusion. *Id.* at 404, 477 S.E.2d at 722. "A trial [court]'s order granting or denying a new trial upon the facts will not be disturbed unless [its] decision is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law." *Id.* at 403, 477 S.E.2d at 722.

As stated above, we find the verdict was not inconsistent or excessive; therefore, we also find the court did not err in denying Wheeler's motion for a new trial under the thirteenth juror doctrine.

### CONCLUSION

Accordingly, the trial court is

**AFFIRMED.**

KONDUROS and LOCKEMY, JJ., concur.