**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Henry Pressley, Respondent,

v.

Eric Sanders, Appellant.

Appellate Case No. 2017-000163

---

Appeal From Richland County
L. Casey Manning, Circuit Court Judge

---

Unpublished Opinion No. 2021-UP-156
Submitted March 2, 2020 –Filed March 24, 2021
Formerly Opinion No. 5811
Withdrawn, Substituted and Refiled May 5, 2021

---

**AFFIRMED**

---

R. Hawthorne Barrett, of Turner Padget Graham & Laney, PA, and Richard Abner Jones, III, of McGowan Hood & Felder, LLC, both of Columbia, for Appellant.

Page McAulay Kalish, of PMK Law, LLC, and Hammond A. Beale, Jr., both of Columbia, for Respondent.

---

**LOCKEMY, C.J.:** In this personal injury case, Eric Sanders appeals the trial court's order granting Henry Pressley's motion for a new trial *nisi additur*, arguing the trial court erred by granting the motion when Sanders challenged the nature and extent of Pressley's injuries and substantial evidence supported the jury's verdict. We affirm.

**FACTS**

Pressley and Sanders were involved in a car accident on February 16, 2015, when Sanders rear-ended Pressley's stopped vehicle after both cars exited Interstate-77 to turn onto Garners Ferry Road. Pressley was able to drive away from the accident scene, and Sanders admitted fault for causing the accident. Pressley subsequently brought this action against Sanders seeking damages for the injuries he suffered in the accident, and the case proceeded to a jury trial. Sanders testified at trial and admitted he rear-ended Pressley but stated he "rolled" into the vehicle.

Pressley testified the impact from the accident caused his body to jerk forward, he felt pain in his neck and back, and he went to the emergency room (ER). X-rays were performed, and he was prescribed pain medication. Pressley testified he incurred $1,652 in medical expenses from that visit. He stated his pain worsened after the ER visit and he began treating with a chiropractor on February 17, 2015. The chiropractor ordered an MRI and performed manipulations and massages. Pressley continued this treatment for three weeks until March 11, 2015. He stated the cost of the treatments was $2,059 and the cost of the MRI was $989.[1] Pressley testified the treatments did not provide lasting relief and the pain returned—sometimes worse than before—and occasionally radiated to his legs and arms. Pressley recalled he visited his family doctor about a month later because he was still in pain. His family doctor recommended exercises and prescribed pain medication. Pressley explained the medication helped "for a time" but the pain eventually returned. He stated he still suffered with "bad" pain, the muscles in his back and neck hurt, and he continued to experience pain radiating to his arms and legs. About three weeks after his visit with the family doctor, Pressley consulted with his attorney, who suggested Pressley see Dr. Zgleszewski for pain treatment. Pressley explained Dr. Zgleszewski's diagnostic procedures involved the use of needles and he chose to discontinue treatment because the needles were painful and he was unable to tolerate them along with his existing pain. Although

---

[1] The ER, X-ray, MRI, and chiropractic bills were admitted into evidence without objection.

Pressley's family doctor continued to prescribe him pain medication as needed, Pressley sought no further treatment after his visits with Dr. Zgleszewski.

Pressley was sixty-nine years old when the accident occurred and had worked as a bricklayer since high school. He denied having any problems with his neck or back prior to the accident. Pressley stated he was unable to continue working after the accident; however, he did not present a claim for lost wages. He testified his physical activities had been limited since the accident due to the ongoing pain.

On cross-examination, Pressley stated he was still in pain when Dr. Zgleszewski released him on June 9, 2015. He acknowledged he might have stated his pain was gone when he declined further treatment but he believed Dr. Zgleszewski knew he did not want any more injections. He stated he was still in pain at the time of trial.

Dr. Zgleszewski's video deposition was played for the jury, and Pressley offered him as an expert in medicine, physical medicine and rehabilitation, and pain. Sanders did not perform any additional voir dire or object to his testimony or qualifications.

Dr. Zgleszewski reviewed Pressley's records, including his ER visit and chiropractic treatment. He testified the ER physician's findings—that Pressley's back was tender to palpation and tender across the lower lumbar area—were typical after a motor vehicle accident. He stated the X-ray showed no fracture but demonstrated degenerative changes typical for Pressley's age. Dr. Zgleszewski opined chiropractic treatment helped accelerate healing and minimize dysfunction. He stated Pressley's chiropractic examination revealed abnormal findings of moderate degenerative joint disease and his MRI showed degeneration and bulging discs but there was no impingement or entrapment of the nerve roots. He testified the facet joints showed mild arthritis or degeneration, and although he could not determine if the arthritis was symptomatic, he stated that in the absence of nerve root impingement, a patient was less likely to experience nerve root irritation due to the arthritis or any other degenerative changes of the spine. The notes of Pressley's April 20, 2015 visit to his family doctor indicated Pressley complained of neck pain and weakness in his right hand. The family doctor's notes indicated Pressley's "cervical range of motion [wa]s limited to about fifteen-degrees of lateral rotation toward the left and he ha[d] some limitation of side bending." Dr. Zgleszewski confirmed the family doctor prescribed pain medication and muscle relaxers and recommended local heat and stretching.

Dr. Zgleszewski testified he began treating Pressley on May 14, 2015, and that he billed Pressley $4,935 for these treatments. He opined to a reasonable degree of medical certainty these expenses were fair and reasonable for the services rendered. He explained Pressley reported "low back and neck pain" as well as pain radiating through his right arm. Dr. Zgleszewski stated he initially diagnosed Pressley with low back and cervical pain based on Pressley's history and a physical exam. On May 21, 2015, he performed a diagnostic sacroiliac (SI) joint injection, which involved injecting a numbing agent into the left and right joints. He acknowledged this procedure was painful for patients. Dr. Zgleszewski stated the purpose of the procedure was diagnostic but some patients experienced long-term relief from the numbing agent used in the procedure. He stated this particular procedure cost $3,855. Dr. Zgleszewski explained Pressley had "a positive block," meaning he was able to determine the source of the pain. He recommended radiofrequency ablation and platelet-rich plasma injections—both of which involved needles—to each joint as well as diagnostic injections for the neck. However, he recalled Pressley declined further procedures because he had expressed fear of injections. Dr. Zgleszewski stated Pressley reported pain averaging between three and four on a scale of ten during their visits, and he testified Pressley stated his pain was gone during his June 9, 2015 follow-up visit. At that visit, he gave Pressley a 0% impairment rating and found he reached maximum medical improvement (MMI).

Dr. Zgleszewski opined, to a reasonable degree of medical certainty, that based upon his review of the records, his interview with Pressley, and "other information [he] had," it was more likely than not the automobile accident "caused a medical problem that [he] treated." He agreed it was possible Pressley's occupation caused the degenerative joint disease, but Dr. Zgleszewski opined the accident was "the actual and proximate cause of . . . [the] medical problems that [he] treated him for," and the evidence of degeneration was either "an exacerbation of a preexisting condition or it was a new problem that was caused by the car wreck."

In his closing argument, Sanders asked the jury to consider whether all of Pressley's medical treatment was "reasonable and necessary" and stressed that no physician had referred Pressley to Dr. Zgleszewski. Sanders argued Pressley's occupation "may have caused deterioration of [his] body through the years" and emphasized that Pressley told Dr. Zgleszewski on June 9, 2015, that he did not want any further treatment and he received a 0% impairment rating.

The jury returned a verdict for Pressley and awarded him $4,888.30 in actual damages and $5,000 for pain and suffering. Pressley moved for a new trial

absolute, or in the alternative, for a new trial *nisi additur*. The trial court found the verdict was inadequate based on the evidence and granted a new trial *nisi additur*. It ordered Sanders to pay an additional $10,000 in actual damages to bring the total verdict to $19,888.30. The court provided the following as compelling reasons to grant a new trial *nisi additur*. First, the court reasoned no evidence was presented to dispute that the medical treatment and bills resulted from the accident and Pressley submitted "undisputed, uncontroverted evidence of loss in the amount of his total medical bills that were $9,658."[2] The court noted Dr. Zgleszewski "gave an undisputed opinion that the injuries, pain, and subsequent treatment were related to the collision." Additionally, the court stated Dr. Zgleszewski testified the treatment and the bills incurred were reasonable and necessary and no evidence rebutted the treating physician's testimony or opinions. The court explained Pressley testified he suffered injuries to his neck and back that caused radiating pain, missed work due to the injuries, could not sleep at night, and could not engage in normal daily activities. The court stated Pressley "suffered great pain as a result of the accident" and no evidence showed he suffered from neck or back injuries prior to the collision. The court concluded the jury's verdict was "significantly insufficient and inadequate" to compensate Pressley for the actual damages he suffered due to the collision. This appeal followed.

## ISSUE ON APPEAL

Did the trial court abuse its discretion by granting Pressley's motion for a new trial *nisi additur*?

## STANDARD OF REVIEW

"The grant or denial of a motion for a new trial *nisi* rests within the discretion of the trial judge and his decision will not be disturbed on appeal unless his findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law." *Waring v. Johnson*, 341 S.C. 248, 256, 533 S.E.2d 906, 910 (Ct. App. 2000). "'Compelling reasons' must be given to justify the trial court invading the jury's province in this manner." *Riley v. Ford Motor Co.*, 414 S.C. 185, 193, 777 S.E.2d 824, 829 (2015) (quoting *Bailey v. Peacock*, 318 S.C. 13, 14, 455 S.E.2d 690, 691(1995)). "The reviewing court has the duty to review the record

---

[2] The medical expenses, excluding the charges for Dr. Zgleszewski's treatments, total $4,888.30—which was the jury's actual damages verdict—rather than $4,658. The latter figure, which the court and parties mentioned several times, excludes the $138.30 bill for the family doctor and appears to be an inadvertent miscalculation.

and determine whether there has been an abuse of discretion amounting to an error of law." *Pelican Bldg. Ctrs. of Horry-Georgetown, Inc. v. Dutton*, 311 S.C. 56, 61, 427 S.E.2d 673, 676 (1993). "Absent an abuse of discretion, the trial court's grant of a motion for new trial *nisi additur* will not be reversed on appeal." *Waring*, 341 S.C. at 258, 533 S.E.2d at 911.

## LAW/ANALYSIS

Sanders argues evidence supported the jury's verdict and there were no compelling reasons to alter it. He contends he "strongly disputed the reasonableness and necessity" of the expenses for Dr. Zgleszewski's treatments by arguing Pressley's attorney had referred him and relying on the lapse of time between his last visit with the chiropractor and his first visit with Dr. Zgleszewski. Sanders further argues the trial court's conclusion that Pressley "suffered great pain as a result of the accident" was not a compelling reason to disregard the jury's verdict because the extent of Pressley's pain was disputed and the jury compensated him for pain and suffering. Sanders asserts the jury could have concluded Pressley's occupation as a bricklayer—rather than the accident—caused his pain and that the jury's verdict showed that it found Dr. Zgleszewski's treatment was either not causally related to the accident or was not reasonable and necessary. We disagree.

"Although the trial court may not impose its will on a party by substituting its judgment for that of the jury, the court may in the proper case give the party an option in the way of *additur* or *remittitur*, or, in the alternative, a new trial." *Krepps by Krepps v. Ausen*, 324 S.C. 597, 608, 479 S.E.2d 290, 295 (Ct. App. 1996). "[A] new trial *nisi* is one whereby a new trial is granted unless the party opposing it shall comply with the condition prescribed by it." *Id.* at 607, 479 S.E.2d at 295. "Motions for a new trial on the ground of either excessiveness or inadequacy are addressed to the sound discretion of the trial judge." *Riley*, 414 S.C. at 192, 777 S.E.2d at 828 (quoting *Graham v. Whitaker*, 282 S.C. 393, 401, 321 S.E.2d 40, 45 (1984)). "[T]he consideration of a motion for a new trial *nisi additur* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented." *Patterson v. Reid*, 318 S.C. 183, 187, 456 S.E.2d 436, 438 (Ct. App. 1995). "A new trial *nisi additur* may be ordered when the verdict is merely insufficient based on the evidence." *Pelican Bldg. Ctrs.*, 311 S.C. at 61, 427 S.E.2d at 676; *see also Green v. Fritz*, 356 S.C. 566, 570, 590 S.E.2d 39, 41 (Ct. App. 2003) ("A trial judge may grant a new trial *nisi additur* whenever he or she finds the amount of the verdict to be merely inadequate."). "[T]o grant such relief, the trial judge must state compelling reasons for invading the province of the jury." *Green*, 356 S.C. at 570, 590 S.E.2d at 41. "[I]f inapplicable grounds are

given for granting *additur*, the order fails by error of law." *Id.* "The trial judge, who heard the evidence and is more familiar with the evidentiary atmosphere at trial, possesses a better informed view of the damages than this court." *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 600, 493 S.E.2d 875, 883 (Ct. App. 1997). "Accordingly, great deference is given to the trial judge." *Vinson v. Hartley*, 324 S.C. 389, 406, 477 S.E.2d 715, 723 (Ct. App. 1996).

In *Patterson*, this court affirmed the trial court's grant of a new trial *nisi additur*. 318 S.C. at 184-85, 456 S.E.2d at 437-38. There, the evidence consisted of conflicting medical evidence, and the aggravation of a pre-existing condition was at issue. *Id.* at 186, 456 S.E.2d at 438. However, the plaintiff's treating physician testified the plaintiff's condition was "most probably [the result of] her accident." *Id.* (alteration in original). The plaintiff incurred medical expenses of $6,339.40 and, according to the plaintiff's and the physician's testimony, she experienced an increase in permanent pain. *Id.* The jury awarded the plaintiff actual damages of $500.54. *Id.* at 184, 456 S.E.2d at 437. The trial court granted a new trial *nisi additur* and awarded damages of $7,639.40. *Id.* We affirmed the trial court's decision, finding ample evidence supported its finding of an insufficient verdict, and "[t]herefore, the grant of *nisi additur* was not an abuse of discretion." *See id.* at 187, 456 S.E.2d at 438.

Sanders cites *Luchok v. Vena*, 391 S.C. 262, 705 S.E.2d 71 (Ct. App. 2010), in support of his argument. In *Luchok*, this court found the trial court abused its discretion by granting a new trial *nisi additur* when it failed to provide compelling reasons for granting the motion. *Id.* at 263-65, 705 S.E.2d at 72-73. There, the plaintiff was the only witness in her case-in-chief, and the trial court found her testimony established that her chiropractic treatments were reasonable and necessary. *Id.* at 263-64, 705 S.E.2d at 72. Additionally, the plaintiff went to her family doctor the day after the accident but did not go to the chiropractor until three weeks later and continued chiropractic treatment for seventeen months. *Id.* at 264-65, 705 S.E.2d at 72. In granting the new trial *nisi*, the trial court provided the following as compelling reasons: the verdict did not cover all of the chiropractic bills and the charges for the chiropractic treatments were reasonable and necessary. *Id.* at 265, 705 S.E.2d at 73. This court noted the "amount of recoverable damages was hotly contested" and held the trial court was not entitled to determine the treatment was reasonable and necessary as a matter of law when the evidence was conflicting. *Id.* at 264-65, 705 S.E.2d at 72-73. Unlike *Luchok*, here, Dr. Zgleszewski testified about Pressley's treatments. He treated Pressley for neck and back pain, and he opined it was more likely than not the automobile accident caused the medical problems that he treated. Furthermore, the trial court did not

make a finding that the treatment was reasonable and necessary; rather, it pointed out Sanders offered no evidence to contest Dr. Zgleszewski's medical opinion.

Likewise, we find *Green v. Fritz* is distinguishable. In *Green*, this court found the trial court failed to state any compelling reasons for granting a new trial *nisi additur* and simply listed the plaintiff's claimed damages—which were disputed—in its order. 356 S.C. at 570-71, 590 S.E.2d at 41-42. Unlike *Green*, here, the trial court provided compelling reasons for granting the motion. *See Waring*, 341 S.C. at 261, 533 S.E.2d at 913 (holding the trial court did not err by granting a new trial *nisi additur* when it "articulated compelling reasons in [its] order justifying the grant of the *nisi additur*" and the order included a review of the evidence and applicable law).

We find the trial court did not abuse its discretion in granting Pressley's motion for a new trial *nisi additur*. First, the record supports the trial court's finding that Dr. Zgleszewski gave an undisputed opinion that the injuries, pain, and treatment were related to the collision. Dr. Zgleszewski opined to a reasonable degree of medical certainty that it was more likely than not the automobile accident "caused a medical problem [in Pressley] that [he] treated." Additionally, he opined the accident was "the actual and proximate cause of [the] medical problems that [he] treated [Pressley] for." Even though Dr. Zgleszewski acknowledged Pressley's occupation may have caused his degenerative joint disease, he opined the evidence of degeneration was either "an exacerbation of a preexisting condition or it was a new problem that was caused by the car wreck." Sanders did not dispute Dr. Zgleszewski's testimony concerning causation or necessity of treatment through cross-examination, nor did he present any adverse witnesses or evidence to contradict such testimony. Rather, he simply argued to the jury that the treatment was not medically necessary and emphasized no physician had referred Pressley to Dr. Zgleszewski. We find the evidence supports the trial court's conclusion that Dr. Zgleszewski's testimony regarding the cause and extent of Pressley's injuries and pain was undisputed. *See Waring*, 341 S.C. at 256, 533 S.E.2d at 910 (stating the trial court has discretion in ruling upon a motion for a new trial *nisi* and its "decision will not be disturbed on appeal unless [its] findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law").

Further, the record supports the trial court's conclusions that no evidence was offered to dispute that the medical treatment and bills resulted from the accident and that Pressley submitted undisputed evidence of loss equaling the cost of his medical bills. Although Sanders argued to the jury that it should "draw the line at

the pain doctor," he never questioned Dr. Zgleszewski as to the necessity of any treatment. Dr. Zgleszewski testified the charges for Pressley's treatments were fair and reasonable, and Sanders failed to offer any evidence to the contrary. We find the foregoing supports the trial court's finding that Sanders presented no evidence to dispute Dr. Zgleszewski's testimony that the medical treatment and bills resulted from the accident.

Moreover, the record supports the trial court's conclusion there was no evidence that Pressley suffered injuries to his neck or back prior to the accident. Pressley testified he never suffered neck or back pain before the accident. Although Dr. Zgleszewski stated imaging revealed some disc degeneration, he stated there was no root impingement, which made it less likely the degeneration caused pain. Further, he opined the accident either caused or exacerbated Pressley's neck and back pain. Therefore, evidence supports the trial court's conclusion Pressley had no prior neck or back injury.

Finally, we find evidence supports the trial court's conclusion Pressley "was in great pain." *See Hawkins*, 328 S.C. at 600, 493 S.E.2d at 883 ("The trial judge, who heard the evidence and is more familiar with the evidentiary atmosphere at trial, possesses a better informed view of the damages than this court."); *Vinson*, 324 S.C. at 406, 477 S.E.2d at 723 ("Accordingly, great deference is given to the trial judge."). Dr. Zgleszewski noted Pressley's pain averaged a three out of ten. Pressley testified he could no longer work due to the pain, was limited in his daily activities, and was still in pain at the time of trial. Although Pressley did not testify to the exact extent of his pain, he stated he was "in a lot of pain" and "[i]t was bad." He stated the pain subsided at times with treatment but would then return, sometimes worse, and sometimes radiated to his arms and legs. We find this testimony supports the trial court's finding that Pressley was in great pain.

Based on the foregoing, we conclude the trial court articulated compelling reasons to support its conclusion that the verdict was inadequate in light of the evidence presented at trial. We find the record supports the trial court's findings and therefore the trial court did not abuse its discretion by granting a new trial *nisi additur*.

**CONCLUSION**

For the foregoing reasons, we find the trial court did not abuse its discretion by granting a new trial *nisi additur*, and the decision of the trial court is

**AFFIRMED.**[3]

**GEATHERS and HEWITT, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.